Louisville & Nashville Railroad Company v. Offutt.

CASE 70—PETITION ORDINARY—JUNE 12.

# Louisville & Nashville Railroad Company v. Offutt.

APPEAL FROM WARREN CIRCUIT COURT.

1. OPINION ON FORMER APPEAL—RES ADJUDICATA.—This court, on a second appeal in the same case, will treat the opinion of the Superior Court on the former appeal as the law of the case whether that opinion be erroneous or not; but it would not be proper for the court to follow such an opinion unless the law as therein held applies to the facts in the record on a second appeal.

2. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT.—A contract by a railroad company to give one employment as a freight conductor so long as he does "faithful and honest work," is indefinite as to the time of service, and terminable at any time by either party.

3. SAME.—In such contracts, when the term of service is left discretionary with either party, or when it is not definite as to time, or when it was for a definite time, provided both parties are satisfied—in either event either party has the right to terminate it at any time, and no cause therefor need be alleged or proved.

4. SAME.—A contract of employment which does not bind the employe to serve the employer either a definite or an indefinite time, may be terminated at any time by the employer, although he may have agreed to give the employe work as long as he did honest and faithful service—the essential element of mutuality of obligation being absent in such a contract.

5. VALIDITY OF CONTRACT—STATUTE OF FRAUDS.—An agreement by an employer to give the employe regular work so long as he does faithful and honest service is legal, and not against public policy; and such a parol agreement is not within the statute of frauds.

J. A. MITCHELL FOR APPELLANT.

1. The law is well settled that in all cases of indefinite employment as,

for example, "so long as the servant may render faithful and honest service," as in this case, the contract is determinable at the will or option of either party, and the pleadings in this case not only admit the indefiniteness of the time, but also that appellant exercised its right to determine and did end the contract. (Wood's Master & Servant, Secs. 131, 133, 136; Harper v. Hassard, 113, Mass.; Coffin v. Landis, 46 Pa., 431; East Line & Red River Ry. Co. v. Scott, 72 Tex., 70, and 13 Amer. St. Rep., 758.)

2. The essential element of mutuality is entirely missing in the contract set up by the appellee, and it is therefore not enforceable.

3. The question now urged that the appellant had the right to terminate the contract at any time, was not directly nor indirectly passed upon nor referred to by the Superior Court in its opinion on a former appeal, and is therefore not *res adjudicata*. In the case of Adams' Express Co. v. Hoeing, 88 Ky., 373, this court merely held that it was concluded by the decision of the Superior Court on a former appeal, upon a question expressly considered and decided by that court.

H. W. BRUCE AND WILLIAM LINDSAY OF COUNSEL ON SAME SIDE.

EDWARD W. HINES FOR APPELLEE.

1. The question as to the right of appellant to terminate the contract at any time because the term was indefinite, was made by appellant's counsel on the appeal to the Superior Court, and the determination of that question urged by him; and in response to that the Superior Court in its opinion said: "Though the contract as alleged appears to be an extraordinary one, we see nothing in it which is illegal of itself, or which can be held to be against public policy."

2. If the appellant is liable in damages for breach of contract, as was clearly held by the Superior Court, it is certainly equivalent to deciding that appellant had no right to terminate the contract except for cause; and the decision of that court in the former appeal is the law of this case. (Adams' Express Co. v. Hoeing, 88 Ky., 373.)

SIMS & COVINGTON AND H. B. HINES OF COUNSEL ON SAME SIDE.

J. BARBOUR AND EDWARD W. HINES IN PETITION FOR RE-HEARING.

1. The phrase "employment for a definite term," does not necessarily mean an employment for a month or for a year or for a time ending at a fixed period, but includes an employment the continuance

of which may depend upon contingencies—as, for example, for so long as the employe may be able to do the work for which he is engaged, or, as in this case, so long as he does faithful and honest work.

2. It is admitted by the pleadings that Stewart, Evans and Kelland, who made the contract with the appellee, had the authority of the company to make the contract.

3. The contract, as set up in the pleadings and shown by the evidence, has all the essential features of mutuality required in such contracts.

4. Every question presented on an appeal must be taken to have been disposed of by the decision on the appeal unless it be expressly left open for further litigation. (Smith v. Braemin, 79 Ky., 114; Williams v. Rogers, 14 Bush, 776.)

JUDGE LANDES DELIVERED THE OPINION OF THE COURT.

The appellee, having been employed for a number of years as brakesman and freight conductor by the appellant on its road from Bowling Green, Kentucky, to Nashville, Tennessee, was discharged in the month of April or May, 1890, for violating some of the rules of the company.

Early in the month of July following there was a pending strike among the trainmen of the company at Wilder's Station, near Cincinnati, Ohio, when it became necessary for the company to procure men to take the place of the strikers, in order that it might be enabled to handle its freight traffic promptly. For this purpose one W. J. Stewart, who was at the time a "detective" or "special agent" in the employment of the company, was sent by Mr. Metcalfe, the general manager, to Bowling Green, and under special authority conferred upon him by the general manager proposed to hire the appellee to go to Wilder's and work for the company in moving its trains, which had been stopped by reason of the strike, offering him $5 per day and his expenses for the time he might be thus employed. The

appellee accepted this special employment, went to Wilder's on transportation furnished him by the company, worked for the company for two or three days, returned to Bowling Green after the trouble with the strikers was settled, and was paid for the whole time he was absent, including the days of his actual service, making eight days in all, the sum of $40.

The appellee claims that at the time he accepted the employment for the special service referred to he asked Stewart that he might be restored to the position in the service of the company from which he had been discharged as above stated, and that Stewart then and there promised and contracted with him in substance that he should be restored to the position, and that he should keep it so long as he did faithful and honest work for the company. He claims that the same contract was made with him, also by G. E. Evans, who was the superintendent of transportation in the service of the company, and whom he met at Wilder's, and subsequently after the special employment was terminated by Mr. Kelland, who as the assistant general manager of the company. But each of these men denied in his testimony that he made any such bargain or contract with him, and it appears from the testimony of both Stewart and Evans that they had no authority to make any such contract for the company; that such authority did not appertain to the positions which they held, but that the employment of men for such regular service of the company was within the purview of the authority and duties of the division superintendents and their superior officers. But it appears from the evidence that the appellee was kept on the pay roll as freight conductor, with directions to wait until a place could be found for him, and that be-

sides the $40 paid to him for said special service he received $46 as the balance of his pay for the month of July, and $80 for the month of August, and that on the 26th day of September, 1890, he received formal notice from the company that he would be allowed no more time, which was equivalent to a discharge from the service of the company.

This suit was brought by the appellee on the 11th day of October, 1890, to recover pay for the time, to the 26th day of September, for which he had received no pay, and the sum of $10,000 damages for breach of the alleged contract for regular or permanent employment.  There is no controversy between the parties as to the special employment of the appellee by Stewart for service at Wilder's, or as to the pay he was to receive and did receive therefor.  But the alleged contract for regular employment is stated in the petition to have been made at the time the contract for the special service was made, and is set forth in these words, viz:  .  .  .  And at said time the said defendant further agreed and promised and contracted with this plaintiff that when said strike was ended, and the regular trainmen returned to their work at said points, it would give to said plaintiff regular work as freight conductor on its road from Bowling Green, Kentucky, to Nashville, Tennessee, and would restore him to his old crew with which he had worked prior to his going to the State of Ohio, *and that said regular work would continue so long as this plaintiff did faithful and honest work for the defendant.*"

In an amended petition the same statement of the alleged contract was substantially made, with this addition, viz: "And that as his compensation for such work they would pay him at the rate of $95 per month, which said sum of $95 they agreed and promised to pay him monthly."

The allegations of the petition and amendments were denied by the answer, and the issue thus made was tried before a jury in the court below in June, 1891, and upon a verdict in favor of the appellee for $575 a judgment was rendered, which was reversed on appeal to the Superior Court, and the case sent back for a new trial. The second trial resulted in a verdict and judgment against the appellant for $1,500, and the court having refused to grant a new trial that judgment on appeal is now before us for revision.

At the conclusion of the testimony the court on its own motion gave to the jury eight instructions which embodied the views held by the court as to the law of the case, all of which were excepted to by counsel for the appellant. Counsel for the appellant also made three requests for instructions which were refused by the court, and the action of the court in refusing the requests was duly excepted to. Error in thus giving and refusing instructions, and that the verdict was not sustained by sufficient evidence, and was contrary to law, were, with others, alleged as grounds for a new trial.

Counsel for the appellee in their brief rely mainly upon the opinion of the Superior Court, delivered in deciding the case on the former appeal, which, it is claimed, irrevocably settled the law of the case, and in attempting to apply the law as it was held by the Superior Court to the case as it is presented in the record before us, it is contended that the judgment must, therefore, be affirmed. Ordinarily it may be conceded the ruling of this court in such cases has been and should be according to this contention of counsel. (Adams Express Co. v. Hoeing, 88 Ky., 373.)

But we can not allow that it would be proper for us to follow the opinion of that learned court in any such case

unless the law as therein held applies to the facts in the record before us on a second appeal.   On the former appeal the Superior Court held that the contract alleged in the petition was not illegal or against public policy; that it was not within the statute of frauds, and that a discharged *employe for a fixed term*, who sues and whose case is tried before the expiration of his term of employment, can recover damages from his employer for discharging him only up to the date of the trial.   These are undoubtedly correct principles of law, and that the first and second, as stated, unquestionably apply to this case as it appears in the record before us.

We can conceive of no reason for holding that a contract of employment or of service, either for a fixed term or for an indefinite time, would not be legal or would be against public policy.   In actual experience such contracts are constantly made.   And on both principle and authority such contracts must be held not to be within the statute of frauds and, therefore, may be made by parol.   The third principle or rule is likewise well settled.   But whether it applies to this case must be determined from this record.   It is clear to us, after a careful examination of the evidence in the record, that the appellee failed to establish that a contract of any kind was made between the appellant and him, except for the temporary and special service that has been stated, and for which he received as he admits the sum of $40.   Beyond this he failed either to allege or prove that he bound himself to serve the appellant, either for a definite or an indefinite time even conceding that the appellant promised to employ him as alleged in the petition.   Upon his own showing the appellant had no right to make him answer in damages if he failed or refused to enter its service.

It will thus be seen that the essential element of mutuality of obligation was omitted from the alleged contract of hiring, for the breach of which his suit was brought. In addition to this the evidence clearly shows that the two officers or employes of the appellant, Stewart and Evans, the "special agent" or "detective," and the superintendent of transportation in the service of the appellant, who, he alleged, promised him his old place in the service of the company, had no authority to bind the appellant by any such contract of hiring. And it is scarcely conceivable that the appellee, who had been in the service of the company, as he testified, for twelve or thirteen years, did not know that such employes of the appellant had no authority to employ its conductors for regular or permanent service, or that he was not aware that it was the custom of the appellant, which was shown by uncontradicted testimony, to employ conductors, brakemen, etc., without reference to any length of time of service, and subject to dismissal at any time and with the right on the part of such employes to leave the service at any time. Nevertheless, it further appears clearly from the testimony that the appellant, without being bound by contract so to do, placed the name of the appellee on its pay roll, with directions to him to wait until employment could be found for him, and that it expected and intended to furnish him employment, doubtless of the character of his former employment from which he had been discharged. Having done this, and having paid the appellee for a portion of the time of his waiting for work as if he were in actual employment, as he was directed or requested to do, the appellee had the right to expect payment for the whole time of his waiting up to the date on which he was notified of his discharge.

But if it be conceded that there was a contract for regular employment, as alleged in the petition and amended petition, still the contract, as alleged and proved, being that "said regular work would continue so long as this plaintiff did faithful and honest work for the defendant," was a contract indefinite as to the time or term of employment or service, and was, therefore, subject to be terminated at any time at the discretion of either party to it. (L. & N. R. R. Co. v. Harvey, 34 S. W., Rep., 1069.)

. The inevitable conclusion is that the principle or rule of law laid down in the opinion of the Superior Court as to the recovery of damages by an employe *for a fixed term* who has been discharged without cause by his employer has no application to the facts of this case as they are presented in the record.

. The well-settled rule with reference to the character of hiring that is set up in the petition and amended petition is that when the term of service is left discretionary with either party, or when it is not definite as to time, or when it was for a definite time, provided both parties are satisfied, in either event either party has the right to terminate it at any time, and no cause therefor need be alleged or proved. (Wood on Master and Servant, second edition, sections 133 and 136; Am. & Eng. Ency. of Law, volume 14, pages 776, 790; L. & N. R. R. Co. v. Harvey, *supra*.)

In addition to the authorities here referred to the rule as stated is sustained by the cases referred to, and quoted in the brief of counsel for the appellant, the case of East Line & Red River Railway Co. v. Scott, 13 Am. St. Rep., 758, being an especially instructive case. In the view that we have taken of the case it is unnecessary to discuss the instructions given to the jury by the court. Being founded upon a

theory of the law as applicable to the case radically different from our views, it follows that they were erroneous. Upon the case as it is presented in the record, the appellant had the right to terminate the relation between it and the appellee at will and without cause, and is not liable for damages for so doing. But the appellee had and has the right to reasonable pay for the time he waited for employment or work from the appellant up to the date on which he received notice of discharge, and the third instruction requested by counsel for the appellant on this point ought to have been given. This will entitle the appellee to reasonable pay for his time to the 26th day of September, 1890, deducting what he has received therefor from the appellant.

The judgment is reversed and the cause remanded, with directions to set aside the verdict and award the appellant a new trial, and for further proceedings consistent with this opinion.