## Hudson v. Cincinnati, New Orleans & Texas Pacific Railway Company.

### (Decided March 11, 1913.)

### Appeal from Pulaski Circuit Court.

1. Principal and Agent—Existence of Relation—Implied Agency— Trades Unions.—The relation of principal and agent between members of a trade union and its officers is not to be implied from the fact that such officers are the agents of the union.

2. Trades Unions—Agreements—Nature of—Customs and Usages.— An agreement between a labor union and an employer of labor is not a contract but a usage, which the employer intends to adopt and maintain, for the time therein stipulated, in the conduct of his business.

3. Contracts—Construction—Terms Implied.—Where an employer has agreed with a labor union to adopt and maintain for a limited time certain rates of pay and regulations governing its employes

of a particular craft, an employe, entering the service of such employer during the time such usages are in effect, and assents to them, or if they are so generally known as to justify the belief that he knew them and he made no express contract in conflict with such usages, they are a part of his contract as if fully incorporated therein.

4. *Contracts—Rescission.*—A contract for personal service for an indefinite period of time may be terminated by either party, for or without cause.

5. *Contracts—Action for Breach—Pleadings—Petition.*—In an action for breach of contract for personal service for an indefinite period, a petition which seeks to recover only for time lost after the contract had been rescinded by the discharge of plaintiff, does not state a cause of action.

EMMETT PURYEAR, ROBERT HARDING and R. A. JACKSON for appellant.

O. H. WADDLE & SONS and JOHN GALVIN for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Prior to June 28, 1907, William Hudson was in the employ of the Cincinnati, New Orleans & Texas Pacific Railway Company, on its Chattanooga division, as an engineman. Upon that day he was discharged for an infraction of the rules of the company. On September 1, 1911, he brought suit against the company for $2,000, the alleged value of time lost by him during the period between the date of his discharge and December 1, 1908, charging that said sum was due him from the defendant because of its breach of a contract entered into by and between the defendant and the Order of Brotherhood of Locomotive Engineers, of which plaintiff was a member in good standing. The particular covenant upon which he bases his cause of action is as follows: "In case an engineman believes his suspension or discharge unjust he shall within ten days appeal to the superintendent by letter, and if found to have been unjustly suspended or dismissed, he shall be reinstated and paid for all time lost. The proper officers of the company will at all times listen to any complaint that enginemen as a body or individually may wish to present, and under ordinary circumstances make prompt decision in regard thereto." It is charged by plaintiff that his dischage was unjust; that he, within ten days thereafter, by letter appealed to the superintendent of defendant, his superior, for an investigation of the charges against him, offering

therein to submit to said officer proof of his innocence of the charges, and asked for a reinstatement, but that said officer refused to make known the result of his investigations or to reinstate plaintiff. A demurrer to this petition was sustained. In an amended petition plaintiff set out in full the contract alleged in his petition, averring that it was duly executed and delivered by the defendant company and by the duly authorized officers and agents of said Order of Brotherhood of Locomotive Enginemen. It is also alleged that "each and every member of the Order of Railroad Enginemen and this plaintiff was by said contract required to render to the defendant service as engineman under the terms and conditions set forth in said contract, and at the prices therein specified for two years from December 1st, 1906, unless, by notice as in said contract provided, change was made, which notice was not given or change made." The contract referred to contains, first, a list of stations on the Chattanooga division of defendant's railway and the rates of pay of enginemen for trips between such stations, in the yards and on work trains. Then, under the caption of "Rates of Pay and Regulations," follow thirty-four articles. All deal with rates of pay, hours of work, seniority in service, computation of time and overtime, disputes as to time, tests of hearing and eye-sight, and other minor details incident to the operation of engines, except article XXI, relating to suspension and reinstatement, which has been quoted herein above, and article XXXIV, which is as follows: "These rules and regulations will be in effect 2 years from date unless 30 days notice is given by either party of any contemplated changes." A demurrer to the petition, as amended, was sustained. Plaintiff, declining to plead further and his petition having been dismissed, appeals. For appellant, it is insisted, first, that the officers of the union of which he was a member in making the contract in question, acted as the agent of all its members; and, second, under said agreement, and particularly under article XXXIV thereof, the members of said union obligated themselves to work for the railway company, and the railway company bound itself to employ them, for the period beginning December 1, 1906, and ending two years thereafter, under the terms and conditions set forth in the other provisions of said contract. However, in one of the briefs filed on behalf of appellant, this con-

tention is abandoned to an extent, and it is insisted that only those members of said union who accepted employment under this contract undertook to work for a period of two years from December 1, 1906, upon the terms and conditions and for the wages therein provided. On the other hand, it is argued for appellee that individual members of a labor union are not bound by contracts between the union and employers, unless such agreements are ratified by them as individuals; that the contract is void for want of mutuality of obligation, as between it and appellant; that the effect of said agreement was merely to fix the rates of pay and regulations by which enginemen employed by it were to be compensated and governed, during their employment within the period therein designated; that, if said agreement is a contract of employment, the term of service is indefinite and either party could, at any time, terminate it without cause; and that, under the terms of said agreement, the determination by its superintendent that the discharge of appellant was just is conclusive, and no cause of action arises upon an alleged wrongful decision of said officer.

The allegation relied upon to establish agency of appellant on the part of the officers in the execution of said agreement is, that the contract "was duly signed and executed and delivered by the duly authorized officers and agents of the defendant company and said Order of Railroad Enginemen." If they were the agents of appellant, it is to be inferred only from the fact that appellant was a member of the organization, the agents of which they are admitted to be. Appellant has failed to enlighten us, by averment, as to the objects of the union of which he was a member, as contained in its charter, if a corporation, or in its constitution, if it is an association, or whether the officers referred to were the agents of a local or general union. However, the court knows as a part of the history of the times, that the Order of Brotherhood of Locomotive Engineers, and unions engaged in like efforts, are associations of craftsmen, having for their objects improved working conditions and resisting, in concert, the unjust exactions of capital. Their purposes are social, not commercial. Permanent improved labor conditions, not temporary contractual relations between individuals and employers, are the commendable objects with which they are engrossed. A labor union, as such, engages in no business enterprise.

It has not the power, and does not undertake, to supply employers with workmen. It does not, and cannot, bind its members to a service for a definite, or any, period of time, or even to accept the wages and regulations which it might have induced an employer to adopt in the conduct of his business. Its function is to induce employers to establish usages, in respect to wages and working conditions, which are fair, reasonable, and humane, leaving to its members each to determine for himself whether or not and for what length of time he will contract with reference to such usages. Contracts between an individual member of a union and an employer for personal service being merely incidental to the broad purposes of the union, its agents, in acting for the union, in no way bind the individual members thereof.

In Burnetta v. Marceline Coal Co., 180 Mo., 241, Burnetta, a miner and member of the Miners' Union, entered into the service of the Coal Company, and after continuing therein for a short time, voluntarily left the company and sued it for the balance of wages due him. The company admitted the amount charged to be owing him, but denied that it was then due. The workman asserted that the union, of which he was a member, had a contract with the company in which certain pay days were provided for, and that under this contract the amount owing was due. The court there in disposing of the question as to whether a contract made by a union, in respect to rates and regulations, inured to the benefit of its members said:

"The Miners' Union is not an organization for the purpose of conducting any business enterprise, but is purely one for the protection of labor against the unjust exactions of capital. The members of the union do not labor in coal mines for the organization, but each member works for himself, and whatever compensation he receives is for the benefit of himself and family. That the Miners' Union, as an organization, cannot make a contract for its individual members in respect to the performance of work and the payment for it, in our opinion, is too clear for discussion.

"While it may be true that a labor organization may have rules requiring the employer to designate a certain pay day, and if you employ a member of the organization or even one who is not a member, and by agreement his services are to be paid for on the designated pay

days, as established by the rules, it could be well insisted that the contract fixes the time of payment, that is upon the theory that the individual so contracts, and, by no means, upon account of his being a member of the organization which has undertaken to contract for him.

"A contract on the part of an individual that he will perform certain work under the rules of an organization, is not to be inferred from the simple fact that he is a member of the organization. Persons work for themselves and are free and independent. Agreements imposing conditions can only be enforced when the entire proposition has been stated and by them freely accepted."

In 24 Cyc. the author states the rule as follows:

"A labor union ordinarily has no authority to make a contract with employers of its members in respect to the performance of work and the payment for it. In order to bind the individual members they must exercise assent to the terms of the contract. Such assent will not be implied from the fact that they have knowledge at the time of the contract. It cannot maintain an action to enforce a contract made by it on behalf of its members. Nor is it liable to suit on such a contract, which is enforceable only against the individual members who are guilty of a breach of it. An individual member of a labor union, not being bound by the terms of the contract made between the union and its employers as to the time of payment of his wages, has a right to sue therefor on the completion of his work, in the absence of any express contract with him."

Appellant's name is nowhere mentioned in the agreement under consideration. There is in it no language from which it can be inferred that the officers of the union, in signing said agreement, were acting as the agents of appellant. The fact that they were agents of the union will not justify the inference that they were acting for appellant, a member of the union. It is not contended that he ever ratified the act of said officers. The fact that appellant entered the service of the railway company as engineman, knew of the usages which the company had adopted at the instance of the union, assented to and became bound by them, being a mere incident to the objects of the union, cannot be said to be a ratification. It follows, therefore, that the officers of the union, in the execution of said agreement, were not, and could not be, the agents of appellant.

As the relation of principal and agent between appellant and the officers of the union, signing the agreement under consideration, is not shown to exist, no rights accrue to him thereunder by reason of its execution by them, and we now enter into a consideration of the contract that did exist between appellant and the railway company. In this a proper understanding of the contract set out in the pleadings will be of material assistance. That contract was between the union and the railway company alone. It was made, presumably, in furtherance of the policy of the union to secure for its members more remunerative compensation and improved conditions of employment. It does not, in terms, expressly or impliedly obligate any member, or group of members, of the union to work for the railway company for two years, or any length of time, or at all. It does not, in terms, require the railway company to employ even union enginemen, or any enginemen. It is just what it, on its face, purports to be, and nothing more. It is merely a memorandum of rates of pay and regulations governing, for the period therein designated, enginemen employed on the Chattanooga division of the company's railway. Having been signed by appellee, it is evidence of its intention, in the conduct of its business with enginemen on said division, to be governed by the wages and rules, and for the time, therein stipulated. Enginemen in, or entering, its service, during the time limit, contract with reference to it. There is, on its face, no consideration for its execution. It is, therefore, not a contract. It is not an offer, for none of its terms can be construed as a proposal. It comes squarely within the definition of usage as defined in Byrd v. Beall, 150 Ala., 122. There the court, in defining usage, said, "usage" refers to "an established method of dealing, adopted in a particular place, or by those engaged in a particular vocation or trade, which acquires legal force, because people make contracts in reference to it." In support of this definition, 29 Am. & Eng. Ency. of Law, 365, and 12 Cyc., 1033, are cited. It follows, therefore, that all appellee assented to in signing that agreement was that it would adopt and maintain the rates of pay and regulations, and for the period of time, therein stipulated in its dealings with enginemen employed by it on its Chattanooga division of its railway.

If appellant, during the time limit provided in said agreement, entered the service of appellee as engineman

on its Chattanooga division, knew and assented to the
provisions of said agreement, or if they were so gener-
ally known among enginemen as to justify the presump-
tion that he did know them, and made no express contract
in conflict with any of its provisions, the agreement in
question entered into and became a part of his contract
with appellee, as  if  fully  incorporated therein.  This
agreement, as shown, did not undertake to fix a material
element of a contract for personal service, viz.: the pe-
riod of service.  The provision relied upon by appellant
to determine this element is Article XXXIV, as follows:
"These rules and regulations will be in effect two years
from date, unless 30 days notice is given by either party
of any contemplated changes."  None of the other thir-
ty-three articles of the agreement fixes, or undertakes to
fix, the period of service of enginemen who might be in
the employ of the railway company, during  the  time
limit, and how, by any kind of construction, "rules" or
"regulations" or any other language of this article can
be made to mean "period of service," we are at a loss to
understand.  It is contended, in brief, that as some of
the provisions exact of enginemen a service, that when
such provision is construed with article XXXIV, there
is an obligation on the part of the employe to work, and
the company to employ, for two years.  Article I is cited
as requiring such service.  It reads as follows: "Twelve
hours or less will constitute a day's work for switch en-
ginemen.  They will receive $3.50 per day; 35 cents per
hour after 12 hours.  In road service they will be paid
road rates.  One hour will be allowed for meals at or as
near noon or midnight as it is possible."  Again, we are
at a loss to understand how, by any kind of construction,
there has been a meeting of the minds of the parties to
this litigation upon the period of service.  The contract
bears evidence of having been drawn with  the  utmost
care to express the agreement  of  the  parties thereto.
There is an elaborate memorandum of the stations be-
tween which runs are made, and the pay for each run is
fixed for enginemen on passenger trains, through and
local freights.  Another provision fixes how much en-
ginemen are to be paid when attending court at the in-
stance of the company.  Another requires their tools and
necessary equipment, including lamps, to be placed on
engines at terminals.  When these articles go into the
minutest details, it is not reasonable to suppose that if

the parties so intended, the draftsman, in the preparation of the agreement, would have used the words usually employed to express agreements as to period of service, such as, engineman, ———, or a certain number of enginemen, agree to serve the company and the company agrees to employ, for ——— months or ——— years, etc. The contention that the period of service was fixed by said contract, or was other than indefinite, is without merit.

When appellant's contract of employment with appellee is fairly construed, it is evident that the period of service is indefinite, and, that being true, either party had the right to terminate it at any time, for or without cause. L. & N. R. R. Co. v. Offutt, 99 Ky., 427. Appellee did terminate said contract by the discharge of appellant. His claim is for time lost after the determination of the contract between him and appellee and all his rights thereunder had ceased. The trial court correctly held that his petition stated no cause of action.

Judgment affirmed.