## Bowen v. Chenoa-Hignite Coal Company.

(Decided February 18, 1916.)

### Appeal from Bell Circuit Court.

1. Frauds, Statute of—Contents of Writing—When Not Sufficient.—A copy of the minutes of a meeting of a board of directors, authorizing the president of a corporation to employ a mine foreman at a salary not above a certain limit, and requiring him to report back to the board for its approval any contract of employment made thereunder, which copy does not show the duration of the employment, or any undertaking on the part of plaintiff to perform the services required, or whether the contract was reported to or approved by the board of directors, of itself furnishes no evidence that the president made with plaintiff such contract as was therein authorized.

2. Frauds, Statute of—Requisites of Writing—Cannot be Supplied by Parol.—Under the statute of frauds a writing evidencing a contract must be complete in itself, and it is not competent for the party claiming the benefit of such writing to supply deficiencies therein by parol.

3. Master and Servant—Termination of Employment—Indefiniteness of Contract as to Term.—Under the well-settled rule of law that a contract of employment, if indefinite as to the duration thereof, is terminable by either party at any time, even if the writing relied on by plaintiff could be regarded as constituting a contract, its failure to mention the term of employment made it terminable at any time.

4. Master and Servant—Termination of Employment—When Silence of Contract Cannot be Supplied by Allegation of Custom or Usage. —Where the writing sued on is wholly indefinite as to the duration of employment, it is terminable at the will of either party and

custom or usage cannot have the effect to extend it; hence an allegation and proof of such custom or usage cannot supply the duration of employment where the writing is silent.

PATTERSON & INGRAM for appellant.

WILLIAM E. CABELL for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The purpose of the appellant, M. S. Bowen, in bringing this action in the court below was to recover of the appellee, Chenoa-Hignite Coal Company, a corporation engaged in mining and selling coal, damages for the violation of an alleged contract whereby, as averred in the petition, it employed him to serve it as superintendent and foreman of its coal mine for the term of one year, beginning October 1, 1914, "at a salary of $150.00 per month, with residence and coal for his private use, furnished free of cost and with the privilege of buying his goods in the store at a discount of fifteen per cent. off of store prices during his term of office." It was further alleged in the petition that after rendering appellee three months' service as mine superintendent under the contract referred to, appellant was wrongfully discharged by it. The petition contains the admissions that appellant's discharge resulted from a reorganization of the appellee company and change in its officers; and that for and during the time he served appellee, appellant was paid by it a salary of $150.00 per month, furnished a residence and coal for his use, and allowed the fifteen per cent. discount on all merchandise purchased at its store.

Appellee filed a general demurrer to the petition as amended, which the circuit court sustained. Though given leave to further amend, appellant refused to do so; thereupon the court dismissed his petition, and from the judgment manifesting these rulings he has appealed.

The writing relied on as evidencing the alleged contract in question was filed with and made a part of the petition. It is a copy of the entire minutes of a meeting of appellee's board of directors, held September 12, 1914, and is in words and figures as follows:

"Minutes of a called meeting of the board of directors of the Chenoa-Hignite Coal Company held on Saturday, September 12, 1914, at 9:30 A. M., at the office of Wm. Ayres in Pineville, Ky., pursuant to notice.

"Following were present at said meeting: W. H. Hollingsworth, F. G. Burnette, Wm. Ayres, P. T. Cairns and J. R. Justice, the above being all of the directors and also all of the stockholders. Said meeting was called to order by the president, F. G. Burnette.

"The affairs of the company having been discussed at some length, Mr. W. H. Hollingsworth resigned his position as general manager to take effect October 1, 1914, which resignation, on vote of the board of directors, was accepted.

"On motion of J. R. Justice, duly seconded, carried by vote of the board, it was ordered that a superintendent and mine foreman of the company be appointed at a salary of $150.00 per month, with residence and coal for his private use furnished free of cost, and with the privilege of buying his goods in the store at a discount of 15% off of store prices during his term of office. The president was authorized to negotiate with W. L. Stallsworth or other suitable or competent men, who shall be satisfactory to the board of directors to serve as superintendent and mine foreman of the company's mining operations on the above terms of compensation, or less if same can be agreed upon, and the superintendent and mine foreman so selected to enter upon his duties on October 1, 1914, or as soon thereafter as possible.

"On motion of Mr. Justice, duly seconded and carried, it was ordered that the superintendent and mine foreman shall have complete charge of the active mining operation and all the men employed in connection with same, including the mining of coal and loading same on board the railroad cars; and general supervision of the mines and all work connected therewith.

"It is also ordered that the president submit to the board for its approval any contract or agreement that he may negotiate with said Stallsworth, or other person, for services as superintendent and mine foreman as soon as the same can be practically done.

"On motion duly seconded and carried it was also ordered that the superintendent and mine foreman shall have the authority to employ and discharge all men engaged in mining operations under his direction, or in any other work about the mines, and fix their rate of pay; subject to the approval of the president in case of any raise in wages over the present rate; and also shall have authority to order in behalf of the company

such necessary mine supplies or repairs as the current business may demand, but this authority shall not extend to the purchase of new machinery or rails or the making of any permanent improvements or incurring any considerable indebtedness without first obtaining the approval of the president or board of directors.

"The superintendent and mine foreman shall have all authority necessary to enable him to comply with the laws of the State, and in addition to all reports required to be made by the superintendent to the officers of the State, he shall file with the secretary of this company duplicates of all such reports, and shall also make reports and file same with the secretary of this company from time to time, of the operation of the mine and other property under his control.

"Upon motion of J. R. Justice and carried by the board, it is also ordered that W. H. Hollingsworth be appointed engineer of the company at a salary of $25.00 per month, and as such engineer he shall keep up the centers and prepare from time to time all maps required by the lease and the laws of the State of Kentucky and deliver them to the proper parties as required thereby.

"There being no further business to come before this meeting the same was adjourned subject to the call of the president.

"F. G. BURNETTE, President.
"Attest: P. T. CAIRNS, Secretary."

Appearing on the back of the paper containing the above minutes are these words: "Copy of minutes of board meeting for M. S. Bowen."

Allowing the foregoing paper to speak for itself, it means nothing more than its language clearly expresses, viz.: Authority to the president of the board of directors to employ a mine superintendent or mine foreman upon the terms therein stated, and defines the powers and duties to be exercised and performed by the latter under the employment, when made; but is indefinite, indeed silent, as to the time the employment would continue or end. It does not even name appellant as the person to be employed. It will further be observed that the paper contains a provision requiring that the president submit to the board for its approval such contract as he might make, under the authority therein conferred, with any person employed by him as superintendent and mine foreman; but it does not show that he ever reported the

making of such a contract, or its approval by the board of directors.

"A contract may be formed by accepting a paper containing terms. If the offer is made by delivering to another a paper containing the terms of a proposed contract, and the paper is accepted, the acceptor is bound by its terms; and this is true as a rule whether he reads the paper or not." 9 Cyc., 260. But the paper here relied on is not in the form of a contract proposed by appellee to appellant and submitted for the latter's acceptance. It merely shows authority to appellee's president to make a contract upon the terms mentioned therein, requires him to report the contract when made to appellee's board of directors and that it be approved by the board. The paper shows no making of a contract by the president upon the terms authorized, nor does it show the acceptance of such a contract by appellant, or that following its acceptance by the latter, it was reported by the president to the board or approved by it. It is our conclusion that the paper in question was never accepted or delivered as evidence of a contract between the parties, therefore it cannot be treated as such.

"As a general rule a written agreement cannot be said to be a completed contract until it is signed by all the parties to it. And this is especially true where the agreement expressly provides, or its manifest intent is, that it is not to be binding until signed. Yet it is competent for the parties to adopt it as their contract without signing it, provided their intention to do so is clear." 9 Cyc., 299. But the rule last stated cannot apply here, for the writing relied on by appellant as evidencing the contract was not addressed to him, nor did its provisions make it a form of contract proposed for his acceptance. On the contrary, its provisions contemplate that appellee's president should, under the authority conferred, make with appellant a contract that would comply with their requirements, in such form as that the board of directors might understandingly act upon and approve it. This, we concede, the president in contracting with appellant might have done by merely presenting him a copy of the paper, and upon his agreeing to the employment on the terms therein specified, obtaining his signature at some place thereon, under any such words as would have shown his acceptance of the paper as evidence of the contract between the parties. But this was

not done. There is nothing in the contents of the paper nor in any writing endorsed thereon or executed in connection therewith, that shows the acceptance of its terms by appellant, the board's approval of the contract as thus made following such acceptance, or even that the making of the so-called contract was ever reported to the board by the president.

Although it is, in substance, alleged in the amended petition that after appellant had verbally contracted with appellee through its president for his services as mine superintendent and foreman, its president reported the *parol* contract back to its board of directors, which approved it and furnished appellant a copy of the original minutes authorizing his employment, as evidence of the contract; it is not perceived how these alleged facts sustain appellant's contention that the minutes authorizing his employment sufficiently evidence the contract, when they are utterly silent as to whether the authorized contract was ever made, and likewise silent as to whether it was reported to or approved by appellee's board of directors. The minutes are free of ambiguities and the allegations of the amended petition cannot change or enlarge their meaning, or supply what will be necessary to make them set out the contract in its entirety, in the absence of an allegation and proof of fraud or mistake in the minutes. A writing relied on as a contract must, in all substantial particulars, specifically set out the contract that it may thereby speak for itself. The writing here relied on, without parol evidence to aid it, falls short of establishing a contract at all. In addition to its failing to show appellant's alleged employment, the duration thereof, or any undertaking on his part to perform the services required by the alleged employment, it does not even show the compensation agreed to be paid him. It directs the president to make the best bargain possible under a certain limit, and if he could secure the services of a mine superintendent and foreman at less than the compensation it did not permit him to exceed, it was his duty to do so. So appellant, instead of relying upon the writing to establish the contract, would have to show by parol evidence, not only that it was made as authorized by the writing, but also that it was approved by appellee's board of directors; none of which things is shown by the writing.

By the allegations of his petition as amended appellant is attempting in this case to attach a verbal contract, made by him with appellee's president, and which was not to be performed within a year, to a writing, whereby appellee conferred upon that officer authority to make such a contract, under the claim that as the contract the latter made with him was authorized by the writing and conforms to its requirements, it is. to be treated as a part of the writing and in connection therewith, as constituting in its entirety the contract between the parties. Obviously, the purpose of appellant in thus attempting to connect the verbal contract made with him by appellee's president with the writing authorizing the latter to make it, was to avoid the inhibition as to agreements not to be performed within one year, contained in section 470, Kentucky Statutes, known as the "Statute of Frauds," subsection 7 of which declares:

"No action shall be brought to charge any person * * * upon any agreement which is not to be performed within one year from the making thereof, unless the promise, contract, agreement, representation, assurance or ratification, or some memorandum or note thereof be in writing, and signed by the party to be charged therewith or by his authorized agent * * *."

In Tracy v. Deshon, 157 Ky., 226, in construing and applying this statute, we said, quoting with approval from the opinion in Fowler v. Lewis, 3 A. K. Marsh, 443:

" 'Independent of any statute, an agreement, which can be the subject of specific execution, must be fair, full and complete in all its parts; and if any part of it was left undefined and incomplete by the parties in their negotiations equity would not supply it, by amending the agreement and adding what the chancellor might deem reasonable and proper. For such supplement would then be the work of the court, and not the act of the parties; it would be making instead of simply enforcing what was made. This rule was equally applicable to the contract, whether it was written or verbal. Since the adoption of the statute the contract must be in writing, and that writing must be complete in itself. It is not competent for the party, claiming the benefit of such contract to show that part only was reduced to writing, and then to supply the residue by parol evidence. The evidence to establish one part of the contract must be of the same grade with that which proved the residue, and

that, according to the statute, must be in writing, at least so far as it imposes any obligation on the party to be charged therewith.' "

In Wright v. Weeks, 25 N. Y., 153 (Ct. of Appeals), it was said:

"If a reference in writing to a verbal agreement would let in that agreement, where the subject was one which the statute required to be in writing, it would be sufficient for parties desiring to avoid the trouble of reducing their bargains to writing, to sign a statement that they had contracted verbally respecting a given subject, and they would thus dispense with the statute."

In Ringer v. Holtclaw, 112 Mo., 519, will be found this statement of the law:

"At common law, if the contract was incomplete on its face, oral evidence was admissible to supply the defects, because the oral contract was good without the writing, and, the presumption that all the agreement was in the writing being negatived on its face, no principle of law was violated in admitting the parol evidence. But under the statute of frauds, if the subject matter of the contract is within the statute, and the contract or memorandum is deficient in some one or more of the essentials required by the statute, parol evidence cannot be received to supply the defects, for this were to do the very thing prohibited by the statute." Thomas v. Charles, 118 S. W., 752; Smith v. Theobald, 86 Ky., 141; Greenwood v. Strather, 91 Ky., 482.

The writing filed with the petition furnishes no evidence that appellee's president made with appellant the contract authorized by it, but if it could be regarded as constituting the contract between the parties its indefiniteness as to the duration of the contract or term of employment made it terminable at any time. In L. & N. R. Co. v. Offutt, 99 Ky., 427, we said:

"But if it be conceded that there was a contract for regular employment, as alleged in the petition and amended petition, still the contract, as alleged and proved, being that 'said regular work would continue so long as this plaintiff did faithful and honest work for the defendant,' was a contract indefinite as to the time or term of employment or service, and was, therefore, subject to be terminated at any time at the discretion of either party to it. (L. & N. R. R. Co. v. Harvey, 99 Ky., 157.) * * * The well settled rule with refer-

ence to the character of hiring that is set up in the petition and amended petition is that when the term of service is left discretionary with either party, or when it is not definite as to time, or when it was for a definite time, provided both parties are satisfied, in either event either party has the right to terminate it at any time, and no cause therefor need be alleged or proved. (Wood on Master and Servant, second edition, sections 133 and 136; Am. & Eng. Ency. of Law, volume 14, pages 776, 790);'' East Line & R. R. Ry. Co. v. Scott, 13 Am. St. Rep., 758; Victoria Limestone Co. v. Hinton, 156 Ky., 674.

The doctrine announced in the cases, *supra,* disposes of a further contention made by counsel for appellant, that the silence of the writing as to the duration of the employment can be supplied by the allegation of custom or usage of a year's hiring. It should be remarked here, however, that the existence of such custom, as alleged in the petition, is not sufficiently pleaded. But where, as in this case, the alleged contract, whether it be assumed that it is contained in the writing sued on or in the alleged verbal agreement subsequently made, is wholly indefinite as to the duration of the term of employment, custom or usage cannot have the effect to extend it beyond the will of either party to terminate it. Kelly v. Peter & Burghard, 130 Ky., 533; Thomas v. Charles, 119 S. W., 752.

If the alleged contract made by appellant with appellee was a parol contract—and such was its character if any was made—and was not, as claimed by appellant, to be performed within one year, it was clearly within the statute of frauds and for that reason void. Moreover, its indefiniteness as to the time of duration of the employment made it terminable at the will of either of the parties. In either event appellee had the right to discharge appellant from its service, and, in so doing, it incurred no liability to the latter by reason thereof. It is our conclusion that the circuit court did not err in sustaining the demurrer to the petition, as amended, and dismissing the action, therefore the judgment is affirmed.