## Clay v. Louisville & N. R. Co.

(Decided May 15, 1934.)

D. L. PENDLETON and C. F. SPENCER for appellant.

JOUETT & METCALF and ASHBY M. WARREN for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

T. S. Clay was employed from November 1, 1907, until the 1st day of May, 1929, as station agent and telegraph operator at Indian Fields in this state by the Louisville & Nashville Railroad Company. His services were rendered and accepted subject to the terms of an agreement between the railroad company and the telegraph operators, an association of certain railway employees, which agreement provided for the seniority rule among the station agents and operators of those employees of the railroad company who were entitled to

hold and fill positions in the class of services in which they were employed according to the length of time of the services of the employee to the exclusion of all such employees who had served in the same capacity a shorter period of time in that district. He asserts that his seniority right placed him in the fourth position from the head of the list of employees filling the same position and gave him fourth choice of any position covered by the agreement of the association of the Eastern Kentucky division of the railroad company.

In 1929, J. D. Hayden, division superintendent of the Eastern Kentucky division of the Louisville & Nashville Railroad Company, signed and mailed to Clay this letter:

"On account of the present slow business, the Management has insisted upon curtailing our operating expenses in every department, including the closing of such agency stations where the business has fallen off to the extent that agency service is no longer justified. I think you will agree with me that the business at Indian Fields has decreased to the point where the expense of your salary is not justified, and the Management realizing this has reached an agreement with the Telegraphers' Organization to exclude the position from the Telegraphers' Agreement upon our recommendation that we still maintain an agent at that point at a salary in keeping with the volume of business, although we were very strongly urged to abolish the agency altogether. As you know, on several occasions there was some complaint from the Telegraphers that extra men should be entitled to fill any vacancy at Indian Fields caused by your leaving for a few days, notwithstanding the fact that the agency is conducted in your place of business, and it was principally for the reason, and because we felt that you would agree to accept smaller compensation for your duties as Agent, on account of the slight amount of business handled, that the agreement was made to exclude this position from the Telegraphers' Agreement, in lieu of closing the agency entirely. We are authorized to pay $50.00 per month on this position, effective May 1st, and it is understood that you will be relieved entirely of your train order work, and that your duties will consist entirely of looking after our freight and passenger

business. If you are willing to accept this reduced rate, advise and this arrangement will be put into effect on the first of next month."

The day following the receipt of the letter, Clay, in company with his brother, Floyd W. Clay, went to Ravenna and talked with Hayden "relative to the closing of that agency—operator's position," and requested "more definite details as to what kind of arrangement he [Hayden] intended to make." Clay claims that at that time he explained to Hayden he had twenty years' seniority right that would enable him to take most any position on the division; "it was a valuable right," and he did not "want to give it up," and, if he meant by his letter the $50 arrangement he proposed to make, the agency would be maintained at Indian Fields as "he" "wanted to stay there," "he would consider it instead of taking "his" seniority right and would relinquish "his" seniority right. He admits he and Hayden did not agree at that particular time, but he claims he informed Hayden he "would consider it," and on his return home he discussed the "whole situation" with his brother, and the next day wrote Hayden, and, according to the language of his own letter, he accepted unconditionally the proposition contained in his (Hayden's) letter. His letter so accepting Hayden's proposition reads:

"Your letter 25th inst. relative Agency, Indian Fields, Ky., your file 2115, Desk C. The arrangement to exclude this agency from the Telegraphers' Agreement and to establish in lieu thereof an agency here at a salary of $50.00 per month, is perfectly agreeable to me. Please permit me to thank you again for your consideration in cases of this kind and for the recommendations and effort you are now making toward desiring my appointment as Claim Agent. I hope the time will present itself when I can prove my real appreciation."

The agreement between Hayden and Clay, as evidenced by their letters, went into effect May 1, 1929, and in pursuance thereof Clay "performed all the duties and services required of him from that date until July 7th, 1932," when he claims the railroad company "wrongfully and in violation of this contract" closed its agency at Indian Fields, and thereby he "was thrown out of employment and deprived of all the benefits accruing to

him under the terms and provisions thereof.'' Many years before, and at the date of, the letters of Hayden and Clay, the latter was also engaged at Indian Fields in farming and in the mercantile business and in the general practice of law in the county of his residence.

Clay brought this action to recover of the railroad company $15,000 for abolishing the agency and terminating his employment at Indian Fields.

As the basis of his right to recover, he avers, in his petition as amended, that, after he received Hayden's letter of date April 25, 1929, he ''went to see the said Hayden, superintendent, and agreed to accept the agency at Indian Fields at a salary of $50.00 per month with the understanding and agreement on the part of the defendant company acting by and through this said superintendent, that said employment will be permanent or so long as the plaintiff desired to remain there as such employee; and the defendant company, then and there, by and through its said superintendent, J. D. Hayden, assured the plaintiff and promised and agreed with the plaintiff that said agency's employment should be permanent or so long as the plaintiff desired to remain there as such employee. The plaintiff accepted such employment in consideration of said agreement on the part of the defendant company acting by and through its said agent, its superintendent and not otherwise.''

It is to be noted that his pleading pitches his right to recover on the allegation his employment was ''permanent or so long as the plaintiff desired to remain there as such employee.'' Also, it should be observed that Hayden, in his first letter to Clay, carrying the proposition to employ him, distinctly states the management of the railroad company, realizing the falling off of business at Indian Fields to the point where the expense of Clay's salary was not justified, ''has reached an agreement with the telegraphers' association to exclude the position from the telegraphers' agreement,'' and it would ''still maintain an agent at that point at a salary in keeping with the volume of business.''

True it is, in his testimony to sustain his cause of action, he claims the day following the receipt of the above letter, with his brother, he called upon Hayden and discussed with him the contents of his (Hayden's) letter, but they reached no agreement; he returned home and ''discussed the whole situation with his brother,''

and wrote Hayden the next day. His letter accepting Hayden's proposition is silent as to the period of time for which he was employed. It and Hayden's fail to prove his alleged cause of action. Indeed, the letter of Hayden to him and his to Hayden show the meeting of the minds of the parties in respect to the contract, and the testimony of Clay is he and Hayden reached no agreement on the day of their conversation and that his own mind was not made up, and Hayden's proposition was not accepted on the day of his interview, or at all, as it is alleged. Hayden unequivocally denied in his testimony that he at any time agreed with Clay, in the presence of his brother, Floyd W. Clay, that T. S. Clay's employment ''would be permanent or so long as he desired to remain there as such employee.''

On this evidence the jury returned a verdict for the railroad company.

Hayden's letter to Clay and Clay's letter to him not only corroborate the testimony of Hayden, but even the testimony of Clay himself without the letters is a sufficient corroboration of Hayden's to sustain the verdict of the jury.

Clay protests much that his right of seniority was permanent and valuable and that he surrendered it in consideration of the fact the position of station agent and telegraph operator at Indian Fields ''would be permanent, or so long as he desired to remain as such employee.'' Hayden's letter distinctly states the position as station agent and telegraph operator had been excluded by an agreement with the telegraphers' organization from the organization's agreement with the railroad company. The letter of Clay to Hayden does not show that Clay's right of seniority was considered by him when accepting Hayden's proposition. Hayden's letter shows the position of station agent and telegraph operator at Indian Fields by an agreement with the telegraph operators' organization, before it was written, had been excluded from the telegraphers' agreement. Therefore the letters of Hayden and Clay eliminate the question of Clay's right of seniority theretofore existing by virtue of his years of continued services. The letters between the parties were intended by them to be, and are in fact, the best evidence of the terms and provisions of the contract by virtue of which Clay held the position from May 1, 1929, until July 7, 1932. Hay-

den's letter states clearly the proposition offered Clay. The latter's letter contained an unqualified acceptance of the offer as made by Hayden. This conforms to the accepted rule controlling contracts evidenced by the letters of the parties. Hutcheson v. Blakeman, 3 Metc. 80. The contract was completed when Clay's answer containing the direct and unqualified acceptance of Hayden's proposition was dispatched by mail or otherwise. C. W. Craig & Co. v. Thos. S. Jones & Co., 200 Ky. 113, 252 S. W. 574.

It is not necessary to determine whether the railroad company possessed the right to discharge Clay at any time it desired to do so, either with or without cause, the constitution and by-laws of the telegraphers' organization to the contrary notwithstanding. This question is not involved. The questions to be determined are the existence of the contract between the railroad company and Clay, and what were the conditions, provisions, and terms thereof. If, however, the contract be accepted as it is claimed by Clay, as containing the clause stating that his employment "would be permanent" or so long as he "desired to remain there as such employee," it was terminable at either the will of Clay or the railroad company. It fixed no period of employment. The period of employment was "so long as" Clay "desired" the position. It is a familiar rule, where a contract of hiring does not bind the employee to serve the employer for a definite fixed period, the employer may terminate the contract at any time, though he agreed to give the employee work as long as he did honest and faithful work. Louisville & N. R. Co. v. Offutt, 99 Ky. 427, 36 S. W. 181, 18 Ky. Law Rep. 303, 59 Am. St. Rep. 467. So is a contract for a stated position "as long as he performs his duties in a successful or satisfactory manner." Bridgeford & Co. v. Meagher, 144 Ky. 479, 139 S. W. 750. A contract of hiring not for a definite term or period, but as long as the employee desires the position, is terminable at will of either employee or employer. Hudson v. C., N. O. & T. P. R. Co., 152 Ky. 711, 154 S. W. 47, 45 L. R. A. (N. S.) 184, Ann. Cas. 1915B, 98; Bowen v. Chenoa-Hignite Coal Co., 168 Ky. 588, 182 S. W. 635.

In Hudson v. C., N. O. & T. P. R. Co., 152 Ky. 711, 154 S. W. 47, 45 L. R. A. (N. S.) 184, Ann. Cas. 1915B, 98, we held that an agreement between a labor union and a railroad company did not save from indefiniteness

as to the period of service a contract of employment made with reference to rules and regulations of the union. Hardy v. Myers, 206 Ky. 562, 267 S. W. 1110.

It is not doubtful the language of Clay's contract, as it is alleged in the petition, is that the position "would be permanent or as long as" he "desired to remain there as such employee," left the term of his services as he "wished" or "desired" or entirely in his discretion, and therefore his contract of employment was unilateral and terminable at any time at the will of either party. Dysart v. Dawkins Log & Mill Co., 222 Ky. 415, 300 S. W. 906; Louisville Tob. Warehouse Co. v. Zeigler, 196 Ky. 414, 244 S. W. 899; Combs v. Hazard Ice & Storage Co., 218 Ky. 29, 290 S. W. 1035.

The parties have discussed other questions, in their briefs, including the authority of Hayden to enter into a contract with Clay. It is entirely unnecessary to consider them to dispose of the case properly. The verdict of the jury under appropriate instructions is fully sustained by the evidence, leaving out of consideration the fact the contract sued on by Clay is unilateral.

Wherefore the judgment is affirmed.