## Louisville & N. R. Co. v. Bryant et al.
## Bryant et al. v. Louisville & N. R. Co.
(Decidde March 27, 1936.)

ASHBY M. WARREN and WOODWARD, HAMILTON & HOBSON for Louisville & N. R. Co.

C. P. BRADBURY and T. C. CARROLL for Bryant and Roller.

J. V. CONNER and A. B. BENSINGER for Order of Railway Conductors.

CRAWFORD, MIDDLETON, MILNER & SEELBACH for Brotherhood of Railroad Trainmen and J. L. Starks.

OPINION OF THE COURT BY MORRIS, COMMISSIONER —Affirming in part and reversing in part.

The Louisville & Nashville Railroad Company operates a line of railway from Louisville to Corbin known as the "Lebanon branch," and from Louisville to Bowling Green known as "main stem first division." All trains on both of the branches use the same track between Louisville and Lebanon Junction, a distance of about 30 miles.

B. F. Bryant and W. C. Roller, formerly conductors, were demoted to brakemen on account of the depression, and were working extra with seniority rights attached to the Lebanon branch. Claiming that under the agreement between the railroad and its employees they and other employees similarly situated were entitled to operate and man all trains on the Lebanon branch between Louisville and Corbin, Bryant and Roller brought this action against the railroad, the Brotherhood of Railroad Trainmen, and the Order of Railway Conductors, for a declaration of their rights. Later certain employees of the main line branch were made parties defendant. After the institution of the action, the railroad company discharged plaintiffs for bringing this suit without proceeding in the order, and pleaded, among other defenses, that they were not entitled to maintain the action. Plaintiffs replied that their discharge was in violation of article 31 of the agreement between the railroad company and its employees providing that trainmen will not be demerited, disciplined, or discharged without just cause, and was therefore invalid. The court adjudged that the action of the railroad in discharging plaintiffs was void and that they were entitled to maintain the action. The court further adjudged that trainmen should continue to be assigned to trains operating over the Lebanon branch from Louisville to Corbin, from the Lebanon branch seniority district or division, and from the main line district or division on the mileage percentage basis. From that part of the order adjudging the discharge of plaintiffs to be void, the railroad company appeals, and also prosecutes a cross-appeal. From that part of the order construing the agreement unfavorably to plaintiffs, they appeal.

580

The principal question for determination is the proper construction of article 28, formerly article 31, of the agreement between the railroad company and its trainmen, reading:

"When trainmen are on runs that extend over more than one division, the number of trainmen on such runs will be furnished by each division in proportion to the number of miles made on each division."

The evidence shows that in the year 1919 there was a dispute between passenger trainmen on the Lebanon branch and the main line branch, and an opinion was rendered by the vice president of the Brotherhood of Railroad Trainmen holding that article 31 did not apply to trainmen on the main stem first division. In the year 1924 certain freight runs were established between Louisville and Corbin. Trainmen were assigned to these districts both from the Lebanon branch seniority district and the Louisville-Bowling Green seniority district on a mileage percentage basis. The trainmen on the Lebanon branch contended that they should have the exclusive right to operate the freight trains. In the manner provided by the rules and regulations of the Brotherhood of Railroad Trainmen the question was submitted to a subcommittee of the brotherhood authorized to decide the controversy. On April 25, 1924, the subcommittee decided that through freight trains from Louisville to Corbin should be operated under the mileage percentage basis by trainmen from the two seniority districts. On appeal to the board of directors of the Brotherhood of Railroad Trainmen, the decision of the subcommittee was affirmed. On appeal to the board of appeals, the highest tribunal in the organization for the settlement of controversies and disputes, the board rendered an opinion on November 8, 1924, affirming the decision of the subcommittee and board of directors. From that time on the decision was followed, and through freight trains from Louisville to Corbin were operated by trainmen from the two seniority districts on the mileage percentage basis. In the year 1931 the question was again raised, the same procedure followed, and the same decision reached.

Article 21, section 4, the corresponding clause, of conductors' agreement, reads:

"When runs are operated over two or more sen-

iority districts, conductors on districts involved will exercise seniority on mileage percentage basis based on miles run over each seniority district.''

The only evidence bearing on the question was to the effect that the word ''division'' in the agreement under consideration and the words ''seniority districts'' are used interchangeably and have always been construed as having the same meaning.

The main line branch and the Lebanon branch belong to the same superintendent's division. If the word ''division'' in the article under consideration means ''superintendent's division,'' then the trainmen of the main line branch are not entitled to share in the runs in question; but, if the word ''division'' means ''seniority division'' or ''seniority district,'' then they are entitled to share in the runs. In the argument against the conclusion of the court, the point is stressed that the conductors' agreement refers to seniority districts, while the trainmen's agreement refers to divisions. It is not probable that the brotherhoods and carrier intended that the status of brakemen should be different from that of conductors, and the employment of different terms is more persuasive of the fact that they were intended to have the same, rather than a different, meaning. Indeed, there would seem to be more reason for employees on different branches of the same superintendent's division to share in the runs than for employees on separate and independent divisions to share in the runs. But, however this may be, it must not be overlooked that railroad men speak a language of their own, and that the terms which they employ in their agreements with the carrier are not always intelligible to the uninitiated, but have a technical meaning which those charged with the with the duty of construction must seek and ascertain by putting themselves in the place of the men. Because of this ambiguity and uncertainty in meaning, the rule of practical construction by the parties is peculiarly applicable to such agreements. Piercy v. Louisville & N. R. Co., 198 Ky. 477, 248 S. W. 1042, 33 A. L. R. 322. For a number of years the officers of the brotherhood and the carrier, who made the agreement, and who have spent their lives in interpreting its terms and deciding disputes arising thereunder, have consistently held that trainmen of the Lebanon branch seniority district have not the exclusive right to operate the freight trains in

question, but that the trainmen of the main line seniority district have a right to share in the runs on the mileage percentage basis. In the circumstances we are constrained, as was the lower court, to give controlling effect to this construction and to uphold the judgment.

The propriety of that part of the judgment adjudging the discharge of appellants to be void is challenged by the railroad company. The basis of the attack is that the agreement between the railroad company and its trainmen was for personal service for an indefinite period of time, and under the authority of Hudson v. Cincinnati, N. O. & T. P. R. Co., 152 Ky. 711, 154 S. W. 47, 45 L. R. A. (N. S.) 184, Ann. Cas. 1915 B, 98, could be terminated by either party at any time with or without cause. The holding therein was upon the theory that—conceding the discharged employee's contract with his employer as between themselves embraced the provision with reference to discharging an employee, or that such provision was made with the labor brotherhood for the use and benefit of the employee—the contract of employment in either event lacked mutuality because it did not obligate the employee to serve his employer for any fixed period or the latter to employ him for any definite time. In other words, that either could terminate the contract at any time "with or without cause." As a consequence thereof it was concluded in that (Hudson) opinion that the discharged employee, under practically identical facts as appear in this case, could not maintain an action for damages for his alleged wrongful discharge, since, if he had voluntarily quit his employment, the railroad company for the same reason could not enforce him to continue to serve it under his contract of employment.

We have since declared and enforced that interpretation with reference to similar contracts, the last case being that of Norfolk & Western Ry. Co. v. Harris, 260 Ky. 132, 84 S. W. (2d) 69, 72. In disposing of the question therein, we said:

"Harris had the right to abandon or quit the railway company's service when he chose, either with or without cause, and, of course the railway company had the reciprocal right to discharge him subject to his right to appeal to the tribunals of the brotherhood for a review of the act of the railway company."

That principle was adhered to in the intervening case of Clay v. Louisville & N. R. Co., 254 Ky. 271, 71 S. W. (2d) 617, 619. In upholding the same principle governing contractural rights, we said in our opinion therein:

"If, however, the contract be accepted as it is claimed by Clay, as containing the clause stating that his employment 'would be permanent' or so long as he 'desired to remain there as such employee,' it was terminable at either the will of Clay or the railway company. It fixed no period of employment. The period of employment was 'so long as' Clay 'desired' the position. It is a familiar rule, where a contract of hiring does not bind the employee to serve the employer for a definite fixed period, the employer may terminate the contract at any time, though he agreed to give the employee work as long as he did honest and faithful work. Louisville & N. R. Co. v. Offutt, 99 Ky. 427, 36 S. W. 181, 18 Ky. Law Rep. 303, 59 Am. St. Rep. 467. So is a contract for a stated position or 'as long as he performs his duties in a successful or satisfactory manner.' Bridgeford & Co. v. Meagher, 144 Ky. 479, 139 S. W. 750. A contract of hiring not for a definite term or period, but as long as the employee desires the position, is terminable at will of either employee or employer. Hudson v. Cincinnati, N. O. & T. P. Ry. Co., 152 Ky. 711, 154 S. W. 47, 45 L. R. A. (N. S.) 184, Ann. Cas. 1915 B, 98; Bowen v. Chenoa-Hignite Coal Co., 168 Ky. 588, 182 S. W. 635."

To the same effect also is the case of Clark v. Cincinnati, N. O. & T. P. Ry Co., 258 Ky. 197, 79 S. W. (2d) 704.

The same principle, as measuring the rights of the parties under contracts of employment, howsoever made, was upheld and enforced by us in the still later and very recent cases of Western Union Telegraph Co. v. Ramsey, 261 Ky. 657, 88 S. W. (2d) 675, and Putnam v. Producers' Live Stock Marketing Association, 256 Ky. 196, 75 S. W. (2d) 1075, 100 A. L. R. 828. It is difficult to perceive any logical reason why that principle should not be applied as between employer and employee in contracts for service of the nature and kind here involved the same as in any other contract. If employees desire its elimination from their contracts of employment, it could easily be done by pro-

viding for definite periods of service conditioned upon ability and disposition to perform them, with optional rights in the employees to renew the contract in the absence of legal reasons against it, with corresponding obligation of the employer to abide by the option so given.

We are not unmindful that a contrary position seems to have been taken by the Nebraska Supreme Court in the case of Rentschler v. Missouri Pacific Railroad Co., 126 Neb. 493, 253 N. W. 694, 95 A. L. R. 1; but that opinion was not a unanimous one and the reasons advanced therein for ignoring the well-settled principle of contract rights, supra, are not altogether satisfactory, although the opinion cites some from other jurisdictions in apparent support thereof—as does also the annotation following that opinion in the last publication, commencing on page 10 of the A. L. R. volume. The Nebraska Supreme Court in that case criticizes our opinions as well as those of other courts taking the same view. None of the courts adopting the principles of the Hudson and following cases from this court were, nor were we in any of those opinions, able to find any logical reason why such contracts' should be made an exception to and governed by an entirely different rule from the universal one applicable to all other classes of contracts, and especially so when the open clause therein could be guarded against in some such manner as is above indicated. A different interpretation results in forcing an employer to continue in his service an unsatisfactory employee, although the grounds of his dissatisfaction might not amount to legal or just cause. Such an enforced relationship in such circumstances would most probably be a continuous source of agitation to the detriment of both parties to the contract, as well as to the service to be performed.

Neither are we able to detect any distinction between the right of the employer in such cases to discharge his employee, with consequent immunity to respond in damages, and that of like immunity as against any other relief that the discharged employee may claim under the same unilateral contract of employment, which in this case is a restoration of the contract of employment of plaintiffs, which in effect would be a decree for specific performance, but which Judge Taft, as a Federal Circuit Judge (later Chief Justice of the Supreme Court), said, in the case of Toledo, A. A.

& N. M. Ry. Co. v. Pennsylvania Co. (C. C.) 54 F. 730, 743, 19 L. R. A. 387, could not be done. In the course of that opinion in advancing the idea that courts could not decree specific performance of such a contract, the learned judge said:

> "The reason is obvious. It would be impracticable to enforce the relation of master and servant against the will of either."

He proceeded to point out universally known facts in demonstration of the correctness of that statement. Without more extended discussion, we feel constrained to hold that the court erred in holding that the discharge of plaintiff by the Louisville & Nashville Railroad Company was and is void and of no effect.

Wherefore, for the reasons stated, the judgment is affirmed on the appeal of B. F. Bryant and W. C. Roller; but it is reversed on the original and cross appeal by the Louisville & Nashville Railroad Company, with directions to set it aside as to that defendant, and to render one in conformity with this opinion.

The whole court sitting.