## Newport Dairy v. Shackelford.
(Decided Dec. 20, 1935.)

BENTON, BENTON, SMITH & LUEDEKE for appellant.

ROOT & MATZ for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—
Reversing.

Herman T. Feldman, engaged in business in the name of Newport Dairy, at Newport, Ky., employed Roger B. Shackelford for a period of one year, beginning July 1, 1932, and ending June 30, 1933, "to promote Feldman's sale of dairy products, solicit new accounts both wholesale and retail in Northern Kentucky, at the salary of forty-five & no/100 ($45.00) Dollars, per week and one per cent (1%) of the gross sales brought about by Shackelford, the forty-five & no/100 ($45.00) Dollars payable weekly and the one per cent (1%) at the termination of the contract."

The contract provides that Shackelford shall "devote his entire efforts" to his duties; to promote at all times during the term of the contract the business of Feldman.

Feldman employed, and Shackelford agreed to perform the identical services called for by another contract between them for the preceding year, commencing in 1931 and ending June, 1932. During that year Shackelford's sales were large and valuable. For a period of four months under the contract here involved, his sales aggregated only $581. For this four months they were only $145.25 per month; a lesser sum than that paid him as salary per the month. At the expiration of four months, during which his sales were only $145.25 per month, Feldman gave notice to Shackelford of his intention to terminate the contract on the ground that Shackelford had violated it, in that he had not been, and was not, "devoting his entire efforts" to the duties as he had agreed to by the contract, and had failed to "promote at all times" his business during the past four months.

Shackelford caused to be served on Feldman a written notice of his intention to hold him responsible for the salary of $45 per week for so much of the remaining eight months covered by the contract as he (Shackelford) was unable to secure employment. Later, be brought this action to recover of Feldman his salary of $45 per week for eight months, aggregating $1,607. He also sought to recover certain unpaid commissions and the 1 per cent. commission for sales that he claimed he could and would have made of Feldman's products during the eight months. So much of his petition as sought to recover on the last two items was dismissed. On a trial by a jury to recover damages for Feldman's alleged breach of contract, a verdict was returned in Shackelford's favor for the $1,607.

Feldman is here insisting that the evidence is insufficient to authorize a submission of the case to the jury or sustain its verdict; its verdict is palpably against the weight of the evidence; and the court erred in its instructions to the jury. The evidence in behalf of Feldman establishes with certainty that Shackelford spent much time in dissipation during the four months following the beginning of the contract. During this four months he was off about 10 consecutive days because of a disability. Within this 10 days, Feldman himself was sick. Shackelford, in a letter addressed to Mrs. Feldman, stated that he was "still bruised quite a lot; chest and right arm are sore"; face and nose "all black and blue." In his testimony Shackelford explained this condition by declaring that the drivers for other dairies and himself were discussing the "Drivers' Union," and he did so because of his interest in Feldman's business, and while so engaged he was slapped or hit in the face; later he fell while working at a stove and sustained some of his injuries. A witness of Feldman testified that he was present and saw an individual inflicting punishment on Shackelford about the time the latter admits he sustained his injury, and that Shackelford was at the time under the influence of intoxicants. An application for a new trial on the ground of newly discovered evidence, supported by the affidavit of Feldman, one of his counsel, and the newly discovered witness, was timely made to the court. These affidavits comply with the rule in such case. Civil Code of Practice, sec. 315. They disclose that Feldman used deligence to ascertain the name of this witness, locate her,

and secure her attendance at the trial, but was unable to do so and have process issued and served on her. The affidavit of the discovered witness discloses that she was present at the time Shackelford received the injury to his face which caused him to lay off duty about 10 days, and that the injury was sustained by a beating and bruising of Shackelford by her husband, because of his improper conduct toward her, and that the troubles of the "Drivers' Union," to which Shackelford testified, had no connection directly or indirectly therewith. The importance of the testimony of this witness is apparent, at first blush. It not only contradicts Shackelford's testimony to the effect that he was fighting for the interest of his employer at the time he sustained some of his injuries, but tends to establish a ground fully justifying Feldman's termination of the contract. Feldman and other witnesses testified as to other times and places when and at which Shackelford was so intoxicated as to be wholly disqualified to engage in the work for which he was employed. Numerous witnesses depose that they were present and saw him hanging around places at which intoxicating liquor was sold, and that he was frequently under the influence thereof, and not devoting his efforts to promote Feldman's business. It was the custom of Feldman, of which Shackelford had knowledge, to assemble his employees to discuss their work. On numerous occasions Shackelford failed to atend them. At others, when in attendance, he was in such a state of intoxication as wholly disqualified him to participate therein or engage in the work of the employer then under consideration, and on some of those occasions he disturbed and interrupted those who were present, to such an extent that they were unable properly to engage therein. More than once on account of his intoxicated condition he was carried in an automobile by other employees from Feldman's place of business. This line of testimony is strongly corroborated by a comparison of Shackelford's sales during the four months under the second contract with the sales made by him during the first year of his employment under a like contract. Shackelford explained his presence at beer and whiskey joints by saying that he was soliciting orders for Feldman's dairy products at the times and places. When asked concerning Feldman's custom to assemble his employees and discuss their work with them, he denied the

existence of such custom. He often admitted his attendance at some meetings, but, to offset the effect of the testimony of other witnesses as to his intoxicated condition thereat, he relied on his bad memory. As to the testimony that he was conveyed to his home while in a state of intoxication, he merely denied the statements of the witnesses testifying thereto.

The court's No. 1 instruction assumed that Shackelford "devoted his entire efforts" to his duties, and that he "promoted at all times" for the four months during which his sales amounted to only $581, the business of Feldman, and directed the jury that if Feldman wrongfully discharged him, and that thereafter he used diligence to obtain other like or suitable employment and was unable to obtain such employment between October 25, 1932, and June 30, 1933, to find for him at the rate of $45 per week from October 25, 1932, to June 30, 1933, less such sum, if any, as he earned, or could have earned, by the exercise of such deligence to secure other like or suitable employment during that period.

It will be observed that by the contract Shackelford obligated himself to "devote his entire efforts" to his duties; and to "promote at all times" during the term of the contract "the business of the employer."

The burden was upon Shackelford to establish that, during the four months expiring under the contract, he had substantially complied therewith. Canewood Oil Company v. Cox, 207 Ky. 168, 268 S. W. 1081. In effect, the devotion of his entire efforts to promote at all times the business of Feldman was a condition precedent to the payment of the $45 per week, which Feldman agreed under the contract to pay him. Bingaman v. Securities Inv. Corporation (Neb.) 262 N. W. 859; Kinnison Brothers v. Steger (Tex. Civ. App.) 11 S. W. (2d) 527; Lamar v. King, 168 Ala. 285, 53 So. 279; Bryan v. Capital Trust & Savings Bank, 144 Minn. 434, 175 N. W. 897.

Hence, the court improperly, in instruction No. 1, assumed that Shackelford had fulfilled his part of the contract and therein directed the jury to find for him, if Feldman had wrongfully discharged him.

In order to recover more than mere nominal damages, even if he were wrongfully discharged, it was indispensably incumbent upon Shackelford not only to allege, but to show, a state of facts evidencing the exer-

cising on his part of reasonable diligence to obtain other employment during the eight months for which he sought to recover the $45 per week, and that after making reasonable efforts, failed to find employment, or, if he found other employment, that it did not pay as much as he would have received for like services under the contract. His petition in this respect contains appropriate allegations. We do not discover a scintilla of evidence in the record sustaining the same. The only evidence offered to sustain such allegation is Shackelford's own statement. No other witness testified in his behalf. He was asked and answered as follows:

"Q. Did you seek other employment? A. No sir, I did seek to get it, but there is no other such kind of employment.

"Q. What do you mean? A. Depression and everything else, I could not get a salary. I was able to obtain a part time job selling brushes and things like that, but as far as me going in the dairy business I was blacklisted.

"Q. Did you sell any brushes between that period? A. No sir, I tried to.

"Q. Did you have any kind of employment from October 25, 1932 to June, 1933? A. No sir, I could not get a job."

It should be observed that his answers disclosed no facts, but merely his opinion. He names, no person, time, or place, of whom, when, or where, he even sought employment. Whilst he did not sell brushes, he merely stated, "I tried to." Whether he did so for only a portion of a day, the record is silent.

It should be admitted that such testimony is too indefinite, uncertain, and varying to bring his right to recover within the rule which required him to prove that he had, after reasonable efforts, failed to find employment, or finding it, it did not pay as much as he would receive for like services under the contract. John C. Lewis Co. v. Scott, 95 Ky. 484, 26 S. W. 192, 44 Am. St. Rep. 251.

The court's instruction No. 2 informed the jury that unless Shackelford performed his duties "in a good, efficient and workmanlike manner" Feldman had

a right to discharge him, and it should find for him. The error in instruction No. 1 was not cured by instruction No. 2.

Wherefore, the judgment is reversed for proceedings consistent with this opinion.