## Louisville & N. R. Co. v. Wells.

March 3, 1942.

H. T. Lively, J. P. Hamilton and Tye & Siler for appellant.

C. B. Upton, R. L. Pope and Oscar W. Black for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The appeal is from a judgment in favor of the appellee, George M. Wells, for $250 a month for a period of 6 years, 4 months and 21 days from July 1, 1933, to November 21, 1939, which aggregated $19,158.27. If affirmed, the appellee would be entitled to recover subsequently accruing sums.

The action is for breach of contract of employment

as a conductor made in plaintiff's behalf by the Benevolent Order of Railway Conductors, a labor union, to which he belonged, with the Louisville & Nashville Railroad Company, on February 1, 1927, and in effect at all times since under its automatic renewal. The particular part of that contract upon which the plaintiff rested his case, Article 31, is as follows:

"Conductors will not be demerited, disciplined or discharged without just cause. When such action shall become necessary, the accused shall be duly apprised in writing, within 10 days after knowledge of the occurrence, the nature of the charge or charges that are to be brought against him; and within 10 days after such notification he will be given an investigation by the proper officer of the Railroad, at which time all evidence in the case will be submitted. A proper record in the case will be kept, authenticated by both parties, and made the basis for any discipline that may be administered, or an appeal to a higher officer.

"The accused will be permitted to attend the investigation, hear all the evidence submitted and be represented by fellow employes of his own selection. Within five days after the investigation closes (the investigation is not considered as closed until the division official receives the approval of the General Manager of reports submitted), the proper officer will render a decision, and advise the accused, in writing, the penalty imposed. If the decision is unsatisfactory, the accused, through his representative, will have the right to appeal to higher officer of the railroad. In the event the charge or charges are not proven, the accused will be promptly restored to the service with full rights and paid full wages for any time he may have lost as a result of the charge or investigation."

The essential facts upon which the decision rests are undisputed. There is contradictory evidence concerning the plaintiff's present ability to work as a conductor and perhaps on some other issues which we view also as immaterial.

Sometime in 1930, Wells became partially paralyzed from the effects of Jamaica ginger. He had what is commonly called "jake leg." Several periodic leaves of ab-

sence were granted by the railroad company until the plaintiff and his doctors concluded that he was totally and permanently disabled. His claim of benefits of the group insurance policy covering employees of the company for that degree of disability was allowed. On July 22, 1931, the company, by its proper official, wrote Wells that because of his claim and allowance he was "recorded out of the service." Wells testified that he then took up the matter of his discharge with the Order of Railroad Conductors and also with another labor union, to which he belonged, the Brotherhood of Railroad Trainmen. There is no evidence of any application being made to the railroad company by the plaintiff or the Brotherhoods in his behalf. In May, 1933, within one month of collecting the maximum of $3,000 insurance benefits in 24 monthly installments, the plaintiff applied through his unions for reinstatement into active service and the recognition of his seniority rights. He furnished a certificate of his own doctor that he was physically able to perform the duties of a conductor. After that Wells accepted the final monthly payment of his insurance benefits for total and permanent disability. It does not appear that any action was taken by anybody in relation to his reinstatement until 1938, when examinations were made by several doctors, who seem to have differed in their opinions as to his physical fitness. In November, 1939, Wells brought this suit for breach of contract of employment, seeking not only a recovery of wages he could have earned during the period but also for reinstatement in the service, with seniority rights. The plaintiff justified his delay by testifying that he had been "trying all along to get back." But he was not specific as to his efforts except to prove that he had written a letter to the company in February, 1939, notifying it that he would appeal to the Railroad Labor Board from the refusal of the company to reinstate him. That appeal, however, was not taken. The plaintiff's average monthly earnings previous to his discharge was $250 a month, and that formed the basis of the verdict.

We are of opinion that the demurrer to the petition should have been sustained, and since it was not that the defendant was entitled to a peremptory instruction, the motion for which searched the record for the existence of a legal right to it. The company was not liable to the plaintiff as a matter of law for at least three reasons; and, to be practical, a fourth.

1. The contract relied on was not for a definite period in so far as it embraced the employment of members of the Order. It was certainly terminable at the will of the employee, for there is nothing in it which obligated him to continue in the service for any definite length of time. If any of its terms be subject to the construction that the company was bound to retain him in the service, that condition is unilateral, consequently unenforcible, and does not afford the basis of an action for damages for breach of the contract. Louisville & N. R. R. Company v. Offutt, 99 Ky. 427, 36 S. W. 181, 59 Am. St. Rep. 467; Hudson v. Cincinnati, N. O. & T. P. R. Co., 152 Ky. 711, 154 S. W. 47, 45 L. R. A., N. S., 184, Ann. Cas. 1915B, 98; Clay v. Louisville & N. R. R. Co., 254 Ky. 271, 71 S. W. (2d) 617; Clark v. Cincinnati, N. O. & T. P. R. R. Co., 258 Ky. 197, 79 S. W. (2d) 704. It was so held as to what seems to be the identical agreement involved in this suit in Louisville & N. R. R. Co. v. Bryant, 263 Ky. 578, 92 S. W. (2d) 749.

2. Appellee contends that the terms of Article 31 of the agreement, quoted above, bound the company not to discharge him from its service except for just cause, upon ten days' notice and a hearing, none of which existed or was given. We construe that Article of the contract as relating only to disciplinary action. The primary clause is, "Conductors will not be demerited, disciplined or discharged without just cause." Other provisions refer to "charges" being made against the employee and to an investigation and evidence in relation thereto. The record is "made the basis for any discipline that may be administered or an appeal to a higher officer." The word "discharge" cannot be taken from its context and association. The rule of ejusdem generis applies. The "discharge" mentioned in the provision was never intended, as we believe, to a discharge for physical disability. Louisville & N. R. R. Co. v. Bryant, supra.

3. Fortifying the correctness of the foregoing construction is the fact that on May 7, 1930, the Director of Personnel of the railroad company addressed a communication to each of the four railroad unions, including the Order of Railroad Conductors, advising that after due consideration of what had apparently been the subject of conversations between their representatives and the company's officers, the company construed the

effect of the provisions of the group insurance policy covering its employees to be that, "if any employee is rightfully entitled to and receiving the disability benefits, he is not in condition to render any service of any kind to the company. He is a retired employee in fact, and as such is not entitled to hold his seniority rights." This communication and its acceptance without objection, so far as this record discloses, constituted a modification of and became a part of the contract then existing between the unions and the company in respect to the rights of members of the former who were insured by the policy. The appellee seems to recognize the effect of this modification, and relies on the next following paragraph of the communication which is as follows:

> "However, should there be a case where the surgeons, physicians and all others are mistaken in their diagnosis, and it is later found that the insured was not permanently and totally incapacitated for life, as required by the provisions above quoted, then such case will be treated on its merits so far as return to service of the employee is concerned."

The appellee, however, did not prove that the physicians and surgeons who had made the diagnoses of his total and permanent disability, upon which his claim for insurance benefits was allowed, were mistaken and that he was not then permanently and totally incapacitated within the terms of the policy. At most, he showed by other doctors that he had recovered as he was collecting the last month's installment of insurance benefits.

4. The plaintiff did not plead or prove that he had been unable to procure any employment during the six years and more since his alleged recovery or that he had not earned any money at all. When a contract for personal services has been wrongfully terminated by an employer, it is the duty of the employee to minimize his damages by diligently seeking to find similar employment in the locality. He cannot sit by idly. He cannot recover more than the difference between the contract wages or salary and the amount he earned or could have earned with reasonable diligence. And on this element of a right of action for damages for breach of contract of employment, the burden is on the plaintiff to allege and prove that he exercised reasonable diligence in the respect stated and his inability to earn anything, if such was the case, or what he earned during the period. John

C. Lewis Company v. Scott, 95 Ky. 484, 487, 26 S. W. 192, 44 Am. St. Rep. 251; Abrams v. Jackson County Board of Education, 230 Ky. 151, 18 S. W. (2d) 1000; Torson Construction Company v. Grant, 251 Ky. 800, 66 S. W. (2d) 79. There was neither pleading nor proof of this fact, so even had the other fatal defects not existed, he would have been entitled to recover only nominal damages. Newport Dairy v. Shackelford, 261 Ky. 754, 88 S. W. (2d) 940.

It is not necessary to consider other points made by the appellant.

Judgment reversed.

Whole Court sitting.