# Williams v. Leaf Tobacco Co.

Jan. 12, 1943.

E. B. Anderson and J. B. Anderson for appellant.

Cary, Miller & Kirk for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The appellant brought this action against appellee, a corporation, to recover of it salary or wages under an alleged contract of employment by the terms of which appellee employed appellant to work for it in the tobac-

co business for a period of one year from December 1, 1937, to December 1, 1938, at a salary of $125 a month. The contract of employment is based upon a letter written by appellee on November 18, 1937, and addressed to appellant at Princeton, Kentucky. Omitting caption, etc., the letter reads:

"As per our conversation of several days ago, we find it would be impossible to pay you the amount you are asking but we are willing to pay you One Hundred and Twenty Five Dollars ($125.00) per month, for twelve months (12) payable monthly.

"You are to begin work December 1, 1937, as this is the opening date of the market, but if we cannot start buying at once, it is understood you are to help in repairs or any other kind of work in order to keep busy until we commence buying and working the factory.

"Further understand you are to operate the drying machine and look after the prizing of all tobaccos that are redried.

"You are to give all your time and service to the company and will also use every effort to secure, from your friends, what business you can for the company.

"We are looking forward to seeing you and assure you our full co-operation.

"Yours truly
        "Leaf Tobacco Company, Inc.,
        "(Signed) W. E. Sawyer
        "W. E. Sawyer
                "Vice President and General
                        Manager."

Appellant accepted appellee's offer as stated in the letter and worked for appellee from December 1, 1937, to February 1, 1938, for which appellee paid him $125 a month, a total sum of $250. On or about January 28, 1938, appellee notified appellant that on and after February 1, 1938, his services would be dispensed with and that he would no longer work for it thereafter.

Appellant set out in his petition the contract of employment and that he worked for appellee for a period of two months for which appellee paid him the sum of

$250; that on or about February 1, 1938, appellee discharged him from its employment and refused to give him further employment subsequent to that date; that during the period from December 1, 1937, to and including November 30, 1938, he was ready, willing, and able to perform the services required of him under the contract; and that during the period from February 1, 1938, to December 1 following he had made diligent efforts to secure employment elsewhere but had been unable to find employment or earn any money during that period. He prayed to recover of appellee the sum of $1,250 representing the compensation which he would have earned and received had he worked the remaining ten months of the contract period. Appellee filed its answer in which it categorically denied each and every allegation of the petition but pleaded no affirmative defense. The answer joined the issues.

When the case came on for trial a jury was empaneled and the evidence taken and at the conclusion of the evidence the trial court peremptorily instructed the jury to find a verdict for appellee, to which ruling of the court appellant excepted and prayed an appeal which was granted.

In appellant's brief it is stated that the only question to be determined on this appeal "is whether W. E. Sawyer had the authority to employ appellant to work for appellee for a year, at a salary of $125 per month." Counsel then discusses the evidence and the law applicable to the case and cites and relies upon the cases of Forked Deer Pants Co. v. Shipley, 80 S. W. 476, 25 Ky. Law Rep. 2299; Union Motor Co. of Paducah v. Taylor, 206 Ky. 398, 267 S. W. 170; Commonwealth, etc., v. Mehler & Eckstenkemper Lumber Co., 183 Ky. 11, 208 S. W. 13; and Morris Shoe Co. v. Coleman, 187 Ky. 837, 221 S. W. 242. Since, however, it is virtually admitted in brief of appellee that the contract of employment made between W. E. Sawyer and appellant was binding upon appellee, we need not enter into any lengthy discussion of the evidence relating to that point. It suffices to say that on examination of the evidence for ourselves we think the case comes within the category of the cases cited supra, and that the contract was binding on appellee. While the answer denies any contract of employment or that appellant even worked for appellee or was paid by it for any services, yet the evidence of both parties shows

conclusively that appellant did work for appellee during the months of December, 1937, and January, 1938, and appellee paid him for his services according to the terms of the contract. In brief of appellee it is insisted that the decisive question is not whether the contract was binding on appellee, but insists that the decisive questions are "(a) does the evidence show that the employee substantially complied with the contract during the period he served? and (b) did the employee exercise reasonable diligence to obtain other employment during the unexpired portion of the contract and then fail to find such employment?" Appellant testified that he went with Mr. Sawyer to Princeton, Kentucky, and bought a certain amount of tobacco; that Mr. Sawyer went back to Owensboro and he was to meet him on the next day at Hopkinsville but Mr. Sawyer did not meet him there but sent a telegram stating his reasons for being absent and instructed him to buy the tobacco and he purchased a certain amount of tobacco which was shipped to appellee company which it received and paid for. After discussing and explaining that particular transaction, counsel did not further interrogate appellant concerning other work or services he rendered under the contract. Counsel for appellee cross-examined appellant but did not ask him anything about the services he had rendered or whether or not he had endeavored to secure business from his friends for appellee. It is insisted in brief of appellee that the burden was upon appellant to show that he complied with the terms of the contract during the two months he was in the service of appellee, and since he failed to show that he rendered substantial service for the company, or that he used his influence with his friends to secure business for it, he failed to show any right to recover under the contract. In support of this contention appellee cites and relies upon the case of Newport Dairy v. Shackelford, 261 Ky. 754, 88 S. W. (2d) 940, 942. In that case Shackelford was employed by the dairy company at a certain salary and after the expiration of four months the company gave notice to Shackelford of its intention to terminate the contract on the ground that he had violated it, in that he had not been and was not devoting his entire efforts and time to the business of the company and had failed to promote the business of the company during the past four months. There was much evidence in the case tending to show that Shackelford indulged in excessive drinking and was frequently in

such state of intoxication as wholly disqualified him from performing his duties. Shackelford recovered in the circuit court, but the case was reversed on appeal to this court on the ground that one of the instructions given by the trial court assumed that Shackelford devoted his entire efforts to his duties and that he promoted at all times the business of the company, rather than submitting that question to the jury. That opinion does not specifically state that the dairy company pleaded in its answer Shackelford's dereliction of duty as a defense or that a proper performance of his duties was a condition precedent to the continuance of his services. But from the nature of the notice referred to in the opinion, as well as the evidence, we assume that the dairy company defended on that ground. It is said in that opinion:

> "The burden was upon Shackelford to establish that, during the four months expiring under the contract, he had substantially complied therewith."

No doubt the above quoted statement was based on the pleadings and contract involved in that particular case. In 39 C. J., page 101, sec. 120, the rule is thus stated:

> "Where a servant enters upon his duties and continues until he is dismissed, he need not prove that he performed his services faithfully, as a presumption arises that such is the fact, and the burden of proving a sufficient cause for his discharge is on the master, and this burden does not shift to the employee by reason of an allegation in his complaint that he was dismissed without good cause. The rule, however, is inapplicable when the liability imposed by contract is conditional, and performance of it must be averred and proved or want of performance excused."

In support of the above text a number of cases are cited including the domestic case of Stark Distillery Co. v. Friedman, 150 Ky. 820, 150 S. W. 981, wherein it was held that where plaintiff proves a contract of employment for a definite period and a discharge before the expiration of the contract, he makes out a prima facie case, and it is then encumbent upon the employer to show that he was discharged for reasonable cause. In the present case, as we have already stated, the answer consists of a traverse only but does not plead any cause for discharging appellant. Vance King, secretary-treas-

urer and director of appellee, and who gave appellant his notice of discharge or termination of his services, testified that appellee company was owned by John Ross and William Ross, the former living in Liverpool, England, and the latter, who was president of the company, in Kingsville, Ontario, and that at a meeting of the owners, employees and directors of the company, William Ross and John Ross told him, King, that they did not need the services of appellant and to release him from any further services, but assigned no reason therefor. It is apparent that appellee discharged appellant simply because it conceived the idea that it did not need his services, rather than for any cause. And even if any cause existed it was encumbent upon appellee to plead and prove such cause, which it failed to do.

This brings us to consideration of the question of whether appellant exercised reasonable diligence to obtain other employment during the unexpired portion of the contract period. Appellant testified that he was 63 years of age and had worked in the tobacco business since he was 16 or 17 years old. In reference to his efforts to secure other employment, he testified as follows:

"Q. I will ask you to state to the jury whether or not you tried to get employment after that time? A. Yes, sir, I tried and it was late in the season and the season was half gone or practically half gone.

"Q. Could you get any work at all? A. I didn't get any, no, sir.

"Q. What pretense did you make to get work or employment? A. I remember going to Clarksville to some friends there in business that I had been to previous to this.

"Q. You have been unable to get employment on account of the lateness of the season? A. Yes, sir."

He further stated that he could not get any work at all, but does not explain whether he had reference to the tobacco business or other employment of a dissimilar nature. It may be conceded that his evidence was insufficient to show that he sought employment of any kind other than the tobacco business. The question is whether or not it was encumbent upon appellant to seek employment different from that from which he was discharged, when similar employment was unobtainable. An

extensive annotation, on the subject of the kind of employment which discharged employees must seek or accept in order to minimize damages for breach of contract of employment, will be found in 28 A. L. R., beginning on page 836. Under the heading "Nature of employment which servant must seek or accept" it is said that the general rule supported by many cases is that an employee who is wrongfully discharged before the termination of his contract of employment is not obliged to seek or to accept other employment of a diffrent or inferior kind in order to mitigate the damages. In support of the rule cases are cited from a large number of the States, in fact a great majority of them, including the Kentucky cases of Stewart Dry Goods Co. v. Hutchinson, 177 Ky. 757, 198 S. W. 17, L. R. A. 1918C, 704; and Hill & Perkins v. Hager Bros., 7 Ky. Law Rep. 519. It appears from the annotations, supra, that Texas is the only State which holds to the contrary, and some of the Texas opinions are slightly conflicting, some of them leaning toward the general rule.

Since this jurisdiction is already committed to the general rule (Kentucky cases cited supra), we see no reason why we should now depart therefrom. Furthermore, were this a new question for this court, we would be inclined to follow the general rule rather than the Texas rule. To require a wrongfully discharged employee to seek employment foreign to his lifelong trade and occupation, which in many instances might be unpleasant and undesirable, would be in effect to penalize the innocent party for the benefit of the party in fault. Nor do we think that such discharged employee should be required to make more than a reasonable or substantial effort to obtain employment, even of a like or similar nature, rather than extraordinary or unlimited efforts. We conclude, therefore, that the evidence was sufficient to take the case to the jury and that the court erred in directing a verdict for appellee.

The judgment is reversed and remanded for proceedings consistent with this opinion.