# Ashland Oil & Refining Co. v. Dorton.

May 22, 1945.

E. L. McDonald, S. M. Burnam and Wells & Wells for appellant.
Fred Howes and Earl Walker for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE TILFORD—Reversing.

Appellee sued appellant at law for $58,704 less a credit for $1,673.33 alleging that appellant had promised to pay him the equivalent of the first-named sum as part of the consideration for a license to manufacture and use in any of its operations a patent right obtained and owned by appellee. Set forth in the petition as the contract or agreement between the parties was the following:

"This agreement between Harvey T. Dorton, hereinafter called the licensor, and the Ashland Oil & Refining Company, a corporation of Ashland, Kentucky, hereinafter called the licensee:

"Witnesseth: Whereas, in the course of employment by the licensee of the licensor upon the oil producing properties of the licensee in Kentucky, the licensor invented and devoloped a removable orifice control for use in re-pressuring of oil wells, and has filed application for patent thereon on May 8, 1939, in the Patent Office of the United States, to which has been assigned Serial Number 272,502;

"Now, in consideration of the premises, the said licensor does hereby license and empower the said licensee to manufacture and use in any of its operations the said appliance and any improvements thereof which might be developed hereafter by the licensor to the full end of the term for which letters patent may be granted thereon.

"Witness my signature this 22 day of July, 1939.
"(signed) Harvey T. Dorton."

The Court sustained a demurrer to the petition, whereupon appellee filed an amended petition in which he alleged that he had entered the employ of appellant "in or about the year 1932," and that during the course of his employment he originated, and on January 7, 1941, perfected an "apparatus for flowing wells," the device referred to in the instrument quoted; that said apparatus was of great benefit to appellee in its operation of oil and gas wells; that appellee "approached him for a contract or agreement granting to it the right, authority, and license to use said invention in the development and

operation of said wells to be used by the defendant before the date of the granting of letters patent, as well as after said time;'' and that ''on, or about, the 22nd day of July, 1939 as and for the consideration for the execution of the agreement sued on herein, promised and agreed to give this plaintiff permanent and continuous employment for life and to pay a reasonable compensation for the manufacture and use of said patent in return for his licensing and empowering said defendant to manufacture and use said 'apparatus for flowing wells.' ''

The amendment then stated that upon the execution of the agreement the appellant began and has continued to use the device in its operations; that on January 7, 1941, appellee was granted the patent which he had applied for; that on the 4th day of September, 1941, the appellant wrongfully discharged the appellee from its employ; that the ''premises'' referred to in the written contract were the considerations alleged in the amended petition; and that ''a fair and reasonable compensation for the grant and license to it and of the manufacture and use of said patent by defendant is the sum of fifty-eight thousand seven hundred and four dollars ($58,-704.00), no part of which has been paid except the sum as herein set out.''

The Court overruled a demurrer to the petition as amended, as well as a motion to require the appellee to make the amended petition more definite and certain and to strike therefrom, whereupon the appellant answered, traversing the allegations of the petition and setting forth facts relative to the invention of the apparatus which, it alleged, entitled it to the right to use the same without the payment of a royalty or any consideration whatsoever. These allegations in turn were traversed by a reply, and a trial before a jury resulted in a verdict and judgment for appellee in the sum of $20,000.

The testimony covered a wide range and tended to establish that the invention was perfected and utilized under such circumstances as to entitle appellant to ''shop rights,'' that is, the right to use said invention in its business without the payment of royalty. See 35 Amer. Juris., Master and Servant, Sect. 95, pages 523—525; Revised Statutes, section 4899, 35 U. S. C. A. sec. 48; United States v. Dubilier Condenser Corporation, 289 U. S. 178, 53 S. Ct. 554, 77 L. Ed. 1114, 85 A. L. R.

1488. But it is unnecessary to consider this question, since appellee did not testify or attempt to prove that appellant had promised to pay him any sum whatsoever for the license agreement or the use of the patent. The sum which he sued for was apparently the aggregate amount of salary he would have earned had he continued in appellant's employ during his life expectancy, and the amount which he alleged had been paid him by appellant under the agreement was apparently the amount he earned as salary during the interim between the perfection of the device and his alleged discharge. His proof that he had been promised permanent employment consisted of statements by one or more of appellant's officers that the company regarded him as a permanent employee; and, while there was testimony indicating that he had been discharged, he admitted that he had almost immediately thereafter secured other employment at which he had earned and was earning a higher salary than he had received while in appellant's employ. Thus it is obvious that if appellee's pleadings were sufficient to entitle him to prove the two alleged considerations for the license agreement, his own testimony would have defeated a recovery, since there was no proof of a promise to pay money, and it is fundamental that an action cannot be maintained for breach of a contract for permanent employment where no monetary loss has resulted from the breach. See Louisville & Nashville Railroad Co. v. Wells, 289 Ky. 700, 160 S. W. 2d 16. Our indicated belief that the petition as amended failed to state a cause of action results from the fact that it contains no allegation that the alleged promises, for the breach of which a recovery was sought, were omitted by fraud or mistake from the apparently completed written agreement on which the action was founded. It is true that by virtue of KRS 371.030 the real consideration for the execution of a written contract may be shown by parol without such an allegation; but this does not mean that the consideration so shown may be made the basis of a recovery by one of the contracting parties where it consists of a collateral undertaking as distinguished from a mere variation of the consideration named in the instrument. Castleman-Blakemore Co. v. Pickrell & Craig Co., 163 Ky. 750, 174 S. W. 749. But it is unnecessary to pursue this subject further, since, as before stated, the testimony which the Court allowed the appellee to intro-

duce completely failed to show, either that he had been promised monetary compensation for the license or that he had sustained any damages by reason of his alleged wrongful discharge. It follows that the Court should have sustained appellant's motion for a directed verdict, and that it is unnecessary to discuss the instructions given by the trial Court which predicated appellee's right to recover upon the existence of an express agreement by appellant to pay him compensation.

Appellee contends that appellant filed its motion and grounds for a new trial too late, and accordingly, has moved to strike the Bill of Exceptions and Transcript of Testimony. The verdict and judgment were entered on July 19, 1944, and on July 20th, the following order (caption omitted) was entered: ''Came the defendant, Ashland Oil & Refining Company, within the time allowed by law and produced, tendered and offered to file its motion and grounds for a new trial herein, and the Court not being sufficiently advised thereon, takes time.''

Appellee contends that since the order shows that the motion and grounds for a new trial were merely tendered on the date named and an order showing them filed was not entered until July 24th, the motion could not be considered. We are of the opinion, however, that appellant did all that it was required to do when, within the three day period, it tendered in open court and offered to file its motion and grounds for a new trial. Moreover, on July 24th, when his attention was called to the matter, the Judge caused an order over his own signature to be entered as of July 20th showing that the motion and grounds for a new trial were filed on that date, and unquestionably, under the circumstances shown in this record, he had the power to enter such an order nunc pro tunc. In fact, it was merely the correction of a clerical misprision, since the tendering of the motion and grounds and the offer to file them in open court was equivalent to filing them, and the original order should have shown them filed.

The additional grounds on which appellee urges that the transcript of testimony should be stricken, namely, that the official stenographer transcribed the testimony without an order having been entered by the Court as provided by KRS 28.430, Subsection 2, is so

obviously devoid of merit as to render it unnecessary to discuss it.

The motion to strike the bill of exceptions and transcript of testimony is overruled, and the judgment reversed for proceedings consistent with this opinion.