**WILSON v. HAUGHTON.**

Court of Appeals of Kentucky.

March 19, 1954.

Harbison, Kessinger, Lisle & Bush, Lexington, for appellant.

William B. Gess, Lexington, for appellee.

MOREMEN, Justice.

Appellee, Edward Haughton, recovered judgment in the sum of $1,000 (the amount prayed for was $14,800) against appellant, Sam E. Wilson, Jr., as damages for breach of contract of employment as trainer of race horses owned by appellant.

Reversal of that judgment is asked upon the following grounds: 1. An employee suing for breach of employment contract must both plead and prove reasonable diligence in seeking other employment and (a) appellee did not allege exercise of reasonable diligence to secure other employment or (b) prove exercise of any diligence in seeking other employment. 2. The contract of employment was terminable at any time. 3. The verdict was flagrantly against the weight of the evidence.

In the original petition appellee sought damages on the count of several items of loss which he believed to have resulted from the breach of contract, among them being a claim for loss on the sale of two horses, which allegedly he was required to sell in order to accept employment, a claim for travel and other expenses and a claim of damages in the amount of $10,000 for loss of salary. The claims based upon the sale of the horses and for expenses were not submitted to the jury and since there is no cross-appeal, only the claim for the loss of salary is here involved.

The petition which contained a full allegation of facts in connection with the salary claim made this allegation: "The plaintiff further says that he received offers from other parties to train and handle their horses, but declined said offers by reason of the promises and agreements of the defendant which composed the aforesaid contract between the parties hereto; that after the breach of said contract, the owners of thoroughbred horses had secured trainers, and he was unable to secure employment."

In support of his contention that such an allegation is insufficient, appellant relies upon the following cases: Abrams v. Jackson County Board of Education, 230 Ky. 151, 18 S.W.2d 1000; Newport Dairy v. Shackelford, 261 Ky. 754, 88 S.W.2d 940; Louisville & N. R. Co. v. Wells, 289 Ky. 700, 160 S.W.2d 16, all of which contain the statement that a plaintiff must plead and prove, in an action for breach of an employment contract, that he exercised reasonable diligence to obtain other employment because the law does not imply loss of time and employment by reason of discharge. In no one of the above opinions is the specific language of the petition quoted. The questions before the court do not seem to involve the sufficiency of the language used and the opinions seem to imply that no allegation,

however defective, was made, with the exception of the Newport Dairy case where it was stated: "His petition in this respect contains appropriate allegations", [261 Ky. 754, 88 S.W.2d 942] and this case was decided on the ground that the allegation was not proven.

The Abrams case [230 Ky. 151, 18 S.W. 2d 1001] contains an affirmation of the general rule and the opinion concludes: "Unfortunately for plaintiff, she failed to meet the burden either in pleadings or in proof, and for this reason the appeal must be denied, and judgment affirmed."

In the Wells case [289 Ky. 700, 160 S.W. 2d 18] this statement is made: "The plaintiff did not plead or prove that he had been unable to procure any employment during the six years and more since his alleged recovery or that he had not earned any money at all."

We must therefore return to the above-quoted allegation from the petition in order to determine whether or not it was sufficient, since we do not have the words used in the other petitions as examples.

 Appellant insists that the allegation is a mere conclusion. We have many times echoed the statement that facts—not conclusions of law—must be pleaded. But, any attempt to distinguish between words that express facts and words that state conclusions has been accompanied by difficulty.

Judge Rees, in Johnson v. Inter-Southern Life Ins. Co., 244 Ky. 83, 50 S.W.2d 16, stated this rule of guidance:

"Facts, and not conclusions of law, must be pleaded, but it is sufficient to plead ultimate facts as distinguished from probative facts. The latter are merely matters of evidence required to prove the ultimate facts and should not be pleaded."

 The "ultimate fact," in connection with this phase of the case, concerns whether appellee could obtain employment after the averred breach of contract. We believe the allegation, "that after the breach of said contract, the owners of thoroughbred horses had secured trainers, and he was unable to secure employment," was an averment of the ultimate facts and not a mere conclusion of law.

It was said in Hunt's Ex'x v. Mutter, 238 Ky. 396, 38 S.W.2d 215, 217, that:

"The purpose of pleadings is to apprise an adversary of the issue he is required to meet. Wickliff v. First National Bank, 184 Ky. [783], 784, 213 S.W. 581. It is a firmly fixed rule that a verdict will cure defective pleadings unless the substantial rights of the adverse party have been prejudiced. Hill v. Ragland, 114 Ky. 209, 70 S.W. 634, 24 Ky.Law Rep. 1053; Louisville & N. R. Co. v. Mengel Co., 220 Ky. [289], 290, 295 S.W. 183; Thoenis' Adm'x v. Andrews, 231 Ky. 160, 21 S.W.2d 250."

 That appellant was not misled by the allegation may be gathered from the transcript of occurrences at the trial. The defense was so vigorous and certain on this point, there is no doubt that appellant was fully apprised of the issue.

A discussion of appellant's contention that appellee failed to prove exercise of diligence in obtaining employment demands a full statement of facts. Mr. Edward Haughton testified that on the morning of October 24, 1949, by appointment, he met Mr. and Mrs. Sam E. Wilson, Jr. Present also was their daughter. Appellee told them that he was available if they needed a trainer. He was asked concerning his experience, for references, and if he owned horses. He related his experience and was told that if he was hired, he must dispose of his own horses. Appellee said he would work for $1,000 a month and ten per cent of the purses won. Mr. Wilson asked time to check references and told him to call his wife at four o'clock for his decision. He called at four o'clock, talked with Mrs. Wilson who said that appellant was thoroughly satisfied and for him to be in Louisville on Friday morning to take charge of the horses. He flew to New York, sold his own horses and, on Friday morning, October 28, he arrived in Louisville where he called

Mrs. Wilson by telephone. Mrs. Wilson told him she had some bad news, that Mr. Wilson had changed his mind and had decided not to change trainers at that time. Nevertheless he reported to Mrs. Wilson the same day at the Brown Hotel in Louisville where he was informed that Mr. Wilson's health would not permit him to continue the operation of a racing stable and they had decided upon a dispersal sale. Thereafter a heated discussion took place and there was no doubt that appellee's employment, if any there had been, was terminated.

Appellee testified that it was the custom in the thoroughbred horse industry, with respect to the employment of trainers, that owners, if they are making a change in trainers, make it in the spring or fall for the reason that horses must be ready for the various meets and that very few changes are made in the summer or winter. He testified that after he left the Brown Hotel on the morning of October 28, 1949, he was unable to find a single vacancy or a place in any stable for a trainer and was unable to obtain employment or to receive any income from his occupation between October 28, 1949, and the end of the summer in 1950.

Mr. Charlie Kenney, manager of Cold Stream Stud Farm, who appeared in rebuttal, testified that he visited Mr. Wilson in his hospital room in Chicago about the time with which we are concerned where he gained the distinct impression that Mr. Wilson was dissatisfied with his present trainer. He said about a week later he received a call from Mr. Wilson who asked him about the capability and general character of appellee.

Appellant testified in his own behalf, as did his wife and daughter, all of whom were emphatic in denying facts that would indicate a contract had been made and in placing in issue many statements made by appellee concerning the events that led up to the employment.

In connection with the contention that the proof did not sustain the verdict, reliance is again had upon Newport Dairy v. Shackelford, 261 Ky. 754, 88 S.W.2d 940, 942, where the evidence showed that a person was discharged for breach of employment contract because his intemperate habits had resulted in his failure properly to perform his duties under it. He testified that he sought other employment but did not find any because of the existing economic depression. The opinion observed that "he names no person, time, or place, of whom, when, or where, he even sought employment", and held that the proof in the case was insufficient to show he had made a diligent attempt to obtain work.

In the case at bar, appellee did testify that he had attempted to obtain employment within the thoroughbred industry but due to the fact that the business was seasonal, he was unable to get another connection until the season was over. After being questioned in this regard, appellee, over objection by counsel, concluded his testimony on this point as follows:

"Q. During the period after you left the Brown Hotel on that morning in October, 1949, and in which you tried to find a vacancy, did you find a single vacancy, or a place in any stable for a trainer? A. I did not. It was * * *

"Objection by Counsel for Defendant.

"Objection Overruled.

"By the Court: He has answered the question."

The trial court was apparently satisfied as to the sufficiency of the evidence produced and no cross-examination was had or rebuttal testimony produced on this point.

We believe the proof to be sufficient in view of the fact that it was shown that horse racing is a seasonal occupation. In Williams v. Leaf Tobacco Co., 293 Ky. 207, 168 S.W.2d 570, an employee was hired for one year to work at a fixed salary per month in a seasonal industry. In the opinion in that case testimony was quoted which is very similar to that we have set forth.

It was concluded that the evidence was sufficient to take the case to the jury.

 Appellant next contends that the contract of employment was not for a definite period and was terminable at any time. Reliance is had upon Louisville & N. R. Co. v. Wells, 289 Ky. 700, 160 S.W.2d 16, for establishment of the rule that a contract which does not obligate an employee to continue in service for any definite length of time is likewise terminable at the will of the employer because it is unilateral, and appellant contends that under the testimony adduced appellee failed to prove a contract for any definite time.

Appellee on this point testified in part:

"Q. What statement, if any, did Mr. Wilson make to you after you were employed, as to where you were to take the horses? A. I was to follow the meeting at Louisville, and then when that was over take them to New Orleans.

"Q. For what time did the meeting at Louisville last * * * when did it begin and when did it end? A. It lasted about twenty-one or twenty-two days. * * * I don't know exactly when it began and ended.

"Q. What month was it? A. November, about the 15th. * * * no, maybe it was October, and ran until * * * well, I just don't have those dates.

"Q. For what period of time were the race meetings held in 1949 and 1950 at New Orleans? A. They began on Thanksgiving Day and ran until about March 28th, I believe."

 The foregoing testimony—when considered in connection with the trade practice of employing trainers for the season—is sufficient to establish a contract, definite at least until the close of the race meeting at New Orleans on about March 28.

Finally appellant insists that the verdict was flagrantly against the weight of the evidence and states that appellee's testimony was vague, uncertain and unconvincing and such testimony, when contradicted by the clear and convincing testimony of appellant, his wife and daughter, does not carry that quality of proof and fitness to induce conviction necessary to sustain the verdict.

We do not take the view that appellee's testimony is unconvincing. The fact that testimony is denied does not constitute proof of its lack of plausibility. Louisville & N. R. Co. v. Thomas, 298 Ky. 494, 183 S.W.2d 19. Neither is superiority of numbers conclusive in evaluating the testimony of witnesses. Hale v. James E. Hannah Realty Corp., Ky., 249 S.W.2d 733. Here, the jury accepted the testimony of appellee and his witness and fixed the damage for the breach of contract at an amount they believed to be equivalent to his loss. We are of opinion that the verdict should not be disturbed.

Judgment affirmed.