Thomas M. COOK, Jr., et al., Appellants,

v.

James Albert COOK, Appellee.

Court of Appeals of Kentucky.

Feb. 22, 1957.

Ralph G. Stone, Louisville, for appellants.

Bernard B. Davis, Shelbyville, for appellee.

MOREMEN, Judge.

The will of Thomas Cook, Sr. was probated on October 14, 1952. Under its terms the testator made specific bequests to each of his four children, who are Mary Jeanette Cook (known in religious life as Sister Theresa Margaret), Bessie Cook Elder, James A. Cook and Thomas Cook, Jr. The residue and bulk of his estate were devised to Sister Theresa Margaret, who is a member of the Carmelite Order and lives in a convent at Carmel of St. Joseph, Long Beach, California, and to James A. Cook, who, with the other children, lives in Kentucky.

On October 25, 1952, Bessie Cook Elder, James A. Cook and Thomas Cook, Jr., met in Taylorsville and there prepared and signed a contract, the purpose of which, as stated in a preamble, was "to deal with and dispose of the estate in the manner herein expressed, notwithstanding the division and disposition thereof by the last will and testament of Thomas Cook, Sr." The express consideration was to avoid litigation contesting the validity of the will. Under the terms of this proposed settlement, the residue of the estate would be divided equally among the four children. All the children present signed the instrument. The contract was mailed to Sister Theresa Margaret and her acquiescence and signature were requested. By letter dated October 30, 1952, Sister Theresa Margaret replied in part as follows:

"Your letter to Mr. Ford indicating that we four should share equally in the remainder of the estate, instead of just we two benefiting by it, still gave me no indication of the step which you three have taken. The Agreement reached me on the 28th. I have turned it over to Mr. Ford, unsigned, and he is forwarding it to Mr. Stone with a letter of explanation which you have probably seen by this time. It will be

useless to maintain any lengthy litigation, as anyone with a sound mind themselves can see that Daddy was in full possession of all his faculties and knew what he was doing when he drew up the Will. The fact that I knew nothing of its contents further proves that I did not influence him in any way. You know only too well that Daddy had a strong will and was not dictated to by any one. He ran his own business and was very capable at that.

"I have no wish to be a source of disagreement with any of you three, but I cannot, on principle, sign the document which you have drawn up. I prefer the Will to remain as it is. When the estate is finally settled, I will gladly agree to settle equally on a peaceful basis. It does not matter in the least what Taylorsville thinks of me.

"No doubt it will be a long time before things are finally settled. In the meantime, it is useless to squabble over our departed father's money. If you think I am being unduly stubborn, I cannot help that. I am bound to him by a real love. I am not responsible for the turn of events which took place after I left.

"Again, let me say that I am not trying to be a source of annoyance to you, nor do I begrudge Thomas and Bess their share. This is my decision and I cannot change it."

On January 10, 1955, Sister Theresa Margaret deposited the sum of $7,769.95 in escrow with the Peoples Bank of Taylorsville, which amount we assume was equal to one-half of her share of the residual estate and, under the preamble of the agreement, she expressed a desire to give Bessie Cook Elder and Thomas Cook, Jr., appellants, one-half of her share of the residue of her father's estate. The escrow agreement was conditioned on James A. Cook's complying with the agreement we have described above by this provision:

"That upon receiving written notice from Mary Jeanette Cook (known in religious life as Sister Theresa Margaret), that said J. A. Cook has complied with his agreement of equal distribution of his interest in the residue of the estate of Thomas Cook, Sr. and has paid to Bessie Cook Elder and Thomas Cook, Jr., their equal shares of his interest in said residue, either by order of the Court or otherwise, then, in that event, the Escrow Agent shall pay the sum held by it hereunder to said Bessie Cook Elder and Thomas Cook, Jr. in equal shares."

It was also a condition of the escrow agreement that it be completed within two years from the date of its execution.

Before the escrow agreement was executed, appellee, James A. Cook, was notified by appellants that Sister Theresa Margaret was ready to divide her share of the estate. He made no direct response to the notice and it soon became apparent that he intended to ignore the contract which he had signed, but which had not been signed by Sister Theresa Margaret.

Appellants filed suit based on that contract. In due time appellee moved for summary judgment and in a supporting affidavit stated that the contract was prepared without knowledge of Sister Theresa Margaret and was but a proposed agreement to be binding on all the parties only after it had been subscribed and executed by all the named parties.

One of the appellants filed a counter affidavit in which the statement contained in appellee's affidavit was not denied. This affidavit stated that Sister Theresa Margaret had accepted the terms of the agreement and manifested an intention of complying with the terms of the agreement by specific writings. The letter from Sister Theresa Margaret and the escrow agreement were already part of the record.

An affidavit of Sister Theresa Margaret was also filed in which she stated that it was her intention to comply with the terms of the agreement by making an

equal division of the residue of the estate with her brother and sister, but she reiterated that she had notified them she did not wish her father's will to be broken by a suit contesting its validity. With this affidavit was filed an additional escrow agreement which indicated that it was executed in January 1956. This agreement withdrew the time limitation (2 years) which was a part of the first escrow agreement, but reiterated the condition that appellee, John A. Cook, must comply with the written agreement before the sum held in escrow could be delivered.

Both parties agree that the principal question at issue involves whether Sister Theresa Margaret validated the family settlement by her letter and by the escrow agreements which she executed.

The court, in Bowen v. Chenoa-Hignite Coal Co., 168 Ky. 588, 182 S.W. 635, 637 accepted this statement from 9 Cyc. 299:

> "'As a general rule, a written agreement cannot be said to be a completed contract until it is signed by all the parties to it. And this is especially true where the agreement expressly provides, or its manifest intent is, that it is not to be binding until signed. Yet it is competent for the parties to adopt it as their contract without signing it, provided their intention to do so is clear.'"

We recognize that family settlements in will controversies are favored by the law because they are conducive to the peace of the family even to the extent that the court, under some circumstances, will not inquire into the adequacy of the consideration, or will deem slight consideration sufficient.

In Sellars v. Jones, 164 Ky. 458, 175 S.W. 1002, it was held that forbearance to sue on a claim clearly groundless is not supported by a sufficient consideration for the reason that the promotion of such a suit would be held fraudulent or wanting in good faith; but, short of that, forbearance to sue is a good consideration for a promise founded thereon. It is only essential that the claim be asserted in good faith.

The affidavits filed did not suggest an answer to this question other than that contained in the statement by Sister Theresa in her letter. In the absence of any showing that the last will of the father was defective for any reason, we can only view the original proposed agreement as a compromise offer—a proposed compromise that failed because it was not accepted according to terms. As the record now stands, the proposed agreement was motivated by a desire to avoid friction in the family resulting from the fact that the father had not disposed of his property in a manner agreeable to all the children. Under these conditions, the voiding of the father's will could be achieved only by unanimity. When one party failed to agree, the will stood with its terms unimpaired.

Appellants argue that the actions of Sister Theresa Margaret amount to acquiescence to the terms of the settlement agreement which specifically denied the force of the provisions of the will. With this we cannot agree. By its express terms the provisions of paragraph 7 of the will, which was a clause that pertained to the residuary distribution, were abrogated and, although by her letter and by her escrow agreements, Sister Theresa Margaret evidenced a desire to give to appellants any property which she might inherit, if there is one thing that is certain in this record, it is the fact that Sister Theresa Margaret did not want the terms of her father's will denied.

Vaughan v. Vaughan, 161 Ky. 401, 170 S.W. 981, 983, is a case similar in fact and there the court held that such an agreement was not binding until it was subscribed by each party, and particularly the court said:

> "In addition to the evidence showing that such was its character, it is indi-

cated by the following language of the writing itself:

" 'Each of these articles and terms of this agreement are assented to by the parties hereto, to which they have subscribed their names.'

"As there were persons other than the signers named in the writing as parties in interest, in the meaning of the above language their signatures to the writing were also required to make it complete."

In the instant case the contract states that the agreement is made between the four children. It recognizes the will as probated, abrogates the terms of the seventh paragraph, agrees to another distribution of the property, reaches an accord as to divisions of dividends and other income derived from the estate, binds all the parties named in the caption to do the acts as may be necessary or expedient to give complete effect to the agreement, including the costs of preparation and execution of all documents and asks that the signatures of the parties named be witnessed. The whole tenor of the agreement requires the signature of all the parties before it is effective and, in no way, anticipates that it will become effective without actual signatures.

The record discloses that the will had been probated and an executor had been appointed. He was charged under the will with the duty of carrying out provisions of the will. It is inconceivable that he would have any power to disregard any terms of the will unless directed by all the takers thereunder so to do. As we have indicated above, the will stands until properly set aside. We are of opinion that the court properly entered summary judgment on the ground that the agreement never became a legally enforceable one.

Judgment affirmed.